LANDSKRONER, Appellant,

v.

LANDSKRONER et al., Appellees.

[Cite as *Landskroner v. Landskroner,* 154 Ohio App.3d 471, 2003-Ohio-4945.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 82375.

Decided Sept. 18, 2003.

472

476

Lawrence Landskroner & Associates and Charles Bennett, for appellant.

Levy & Dubyak and Robert J. Dubyak; Paul W. Flowers Co., L.P.A., and Paul W. Flowers, for appellees.

Timothy E. McMonagle, Judge.

{¶ 1} Plaintiff-appellant, Lawrence Landskroner, appeals from the order of the Cuyahoga County Common Pleas Court that granted the motion to dismiss filed by defendants-appellees, Jack Landskroner and The Landskroner Law Firm, Ltd., and dismissed appellant's complaint. For the reasons that follow, we affirm in part, reverse in part, and remand.

{¶ 2} Appellant is the father of defendant-appellee, Jack Landskroner ("Jack"). Both are licensed attorneys and, at one time, practiced together in the law firm of defendant-appellee, The Landskroner Law Firm, Ltd. ("LLF"). In June 1952, according to appellant's complaint, appellant and attorney Robert M. Phillips ("Phillips") formed the predecessor to LLF, a legal professional association known as Landskroner & Phillips. Jack joined the law firm in 1989, first as a law clerk and then as an attorney in 1992. Sometime in 1996, Phillips became disassociated with the predecessor law firm, and the organizational form changed from a legal professional association to that of a limited liability company known as LLF, with appellant as the sole owner of all 100 membership units.

{¶ 3} Appellant alleges that, sometime in 1997, he agreed to transfer 99 of the membership units to Jack. According to appellant's complaint, the parties also agreed on a compensation schedule that varied in percentage of retained profit based on the source of the income. No written document was appended to appellant's complaint memorializing the terms of this agreement in the detail averred in appellant's complaint, and it appears from the record that no such document was executed by the parties. A document dated December 24, 1997, and captioned "Agreement" was, however, attached to appellant's complaint. This document was hand-written by Jack, appears to be addressed to appellant, and outlined what Jack and appellant "discussed about LLF." Succinctly, the document states that, inter alia, Jack "is 100% shareholder" of LLF and that appellant "[i]s entitled to 2/3 profits" while Jack "[i]s entitled to 1/3 profits." Sometime thereafter appellant transferred the remaining membership unit to Jack, and Jack became the sole shareholder of LLF.

{¶ 4} In March 2002, Jack advised appellant that he was terminating their business relationship and, in April 2002, vacated the office space they shared, taking with him all of the employees and business equipment of LLF. In May 2002, appellant instituted a 15-count complaint against Jack and LLF (collectively referred to as "LLF" where appropriate for ease of discussion), seeking declaratory, injunctive, and equitable relief, as well as damages for breach of contract, conversion, and breach of fiduciary duties, among others. In particular, appellant alleges that LLF failed to compensate him according to the parties' agreement and, despite repeated requests for an accounting, he received none. LLF moved to dismiss the complaint under Civ.R. 12(B)(6) for failure to state a claim upon which relief could be granted, which the trial court granted without opinion.

{¶ 5} Appellant is now before this court and, in his sole assignment of error, contends that the trial court erred when it granted the motion to dismiss.

{¶ 6} When reviewing a judgment granting a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted, an appellate court must independently review the complaint to determine whether dismissal is appropriate. *McGlone v. Grimshaw* (1993), 86 Ohio App.3d 279, 285, 620 N.E.2d 935. The reviewing court need not defer to the trial court's ruling on such a motion. Id. Dismissal is appropriate only where it appears beyond a doubt that the complainant can prove no set of facts sufficient to support the asserted claim that would entitle the complainant to relief. *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.* (1996), 76 Ohio St.3d 521, 524, 668 N.E.2d 889, citing *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 245, 71 O.O.2d 223, 327 N.E.2d 753; see, also, *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 144, 573 N.E.2d 1063. In construing the complaint in response to a Civ.R. 12(B)(6) motion, a court must presume all factual allegations contained in the complaint to be true and make all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753. With this standard in mind, we address each of appellant's claims for relief and the corresponding arguments for and against dismissal.[1]

## I. Declaratory Relief

{¶ 7} Appellant sought a declaration that he is the sole owner of all the membership units because the transfer of the membership units from appellant to Jack was not in compliance with R.C. Chapter 1705. LLF argued in its motion to

---

1. Of the 15 claims for relief appellant asserted in his complaint, he addresses only eight claims in his brief on appeal. Because we review a trial court's decision to grant a motion to dismiss de novo, we will nonetheless address each of appellant's claims.

dismiss that there was no controversy entitling appellant to declaratory relief because it is clear from appellant's complaint that Jack is the sole owner of all the membership units.

{¶ 8} In order to be entitled to declaratory relief, there must exist a real controversy between adverse parties that is both justiciable in character and requires speedy relief in order to preserve rights that may be otherwise impaired or lost. *Herrick v. Kosydar* (1975), 44 Ohio St.2d 128, 130, 73 O.O.2d 442, 339 N.E.2d 626; see, also, *Haig v. Ohio State Bd. of Edn.* (1992), 62 Ohio St.3d 507, 511, 584 N.E.2d 704.

{¶ 9} Although appellant contends that there exists a controversy as to who owns the membership units of LLF, appellant avers in his complaint that he transferred all of the membership units to Jack. Appellant argues that the transfer of units to Jack was contingent on his receiving "fair distributions" from LLF. Appellant's complaint makes no such allegation nor is such a contingency contained in the handwritten agreement appended to appellant's complaint. Accepting the allegations *contained in the complaint* as true as we must in reviewing a decision to grant or deny a motion to dismiss under Civ.R. 12(B)(6), we see no justiciable controversy justifying declaratory relief. The trial court, therefore, did not err in granting LLF's motion in this regard.

## II. Judicial Dissolution

{¶ 10} Appellant sought a judicial dissolution of LLF as authorized by R.C. 1705.47. This statute provides that a court of common pleas "may decree" the dissolution of a limited liability company "if it is not reasonably practicable to carry on the business of the company in conformity with its articles of organization and operating agreement." Judicial dissolution is available, however, upon the application of "any member" of the company. As stated previously, appellant's complaint makes clear that appellant has relinquished his membership units in the company and is, therefore, no longer a member. Consequently, it was not error for the trial court to grant LLF's motion as it pertained to appellant's claim for judicial dissolution.

## III. Action for Accounting and Breach of Contract

{¶ 11} Appellant sought an accounting and damages for breach of contract under Counts III and IV of his complaint. Succinctly, appellant claimed that LLF had wrongfully withheld compensation due him under the parties' agreement and sought an accounting of the law firm's profits. LLF argued that appellant's claim for breach of contract was subject to dismissal because appellant

failed to comply with Civ.R. 8(A) and (10)(D), as well as the writing requirements of the Statute of Frauds[2] as codified at R.C. Chapter 1335.

## A. Civil Rule 8(A)

{¶ 12} Civ.R. 8(A) provides, inter alia, that a pleading shall contain a short and plain statement of the claim showing the party is entitled to relief. A party is not required to plead the legal theory of recovery and must only set forth facts that, if proven, establish its claim for relief. *Illinois Controls, Inc. v. Langham* (1994), 70 Ohio St.3d 512, 639 N.E.2d 771. Generally, a breach-of-contract action is pleaded by stating the terms of the contract, performance of plaintiff's obligations under the contract, breach by the defendant, consideration, and damages. *Harper v. Miller* (1957), 109 Ohio App. 269, 11 O.O.2d 17, 164 N.E.2d 754; see, also, *Cairns v. Ohio Sav. Bank* (1996), 109 Ohio App.3d 644, 647, 672 N.E.2d 1058.

{¶ 13} We see no pleading infirmity as it pertains to his cause of action for breach of contract under Civ.R. 8(A). It is true that Count IV of appellant's complaint itself merely states that "the conduct of Defendant Landskroner as described in this Complaint constitutes a breach of the terms of the Agreement." Nonetheless, appellant incorporated paragraphs 1 through 42 under this particular count, which detailed the conduct and history among the parties. In particular, it stated that appellant transferred ownership of LLF to Jack in exchange for certain compensation, which he claims he has not fully received. Nothing further was required in order to put LLF on notice that appellant was asserting a breach-of-contract claim, other than to comply with Civ.R. 10(D).

## B. Civil Rule 10(D)

{¶ 14} Civ.R. 10(D) provides:

{¶ 15} "When any claim * * * is founded on an account or other written instrument, a copy thereof must be attached to the pleading. If not so attached, the reason for the omission must be stated in the pleading."

---

**2.** Appellant argues that LLF is precluded from raising the defense of Statute of Frauds because it failed to raise it as an affirmative defense in an answer as required by the Ohio Supreme Court in *Jim's Steak House, Inc. v. Cleveland* (1998), 81 Ohio St.3d 18, 688 N.E.2d 506. This decision, however, holds no precedential value as applied to this case because it is a plurality decision (four of the seven justices concurred in judgment only). See *Hedrick v. Motorists Mut. Ins. Co.* (1986), 22 Ohio St.3d 42, 44, 22 OBR 63, 488 N.E.2d 840, overruled on other grounds; see, also, *Stuller v. Price*, 10th Dist. Nos. 02AP–29 and 02AP–267, 2003-Ohio-583, 2003 WL 257459; *Mitchell v. Haynes* (Aug. 30, 2001), 7th Dist. No. 00 CA 117, 2001 WL 1004256; *Am. Diversified Developments v. Hilti Constr. Chem., Inc.* (Oct. 29, 1998), Cuyahoga App. Nos. 73116 and 73168, 1998 WL 767618.

{¶ 16} In *Point Rental Co. v. Posani* (1976), 52 Ohio App.2d 183, 6 O.O.3d 171, 368 N.E.2d 1267, the Tenth District Court of Appeals stated:

{¶ 17} "The proper procedure in attacking the failure of a plaintiff to attach a copy of a written instrument or to state a valid reason for his failure to attach same is to serve a motion for a definite statement, pursuant to Civ. R. 12(E). Had that motion been granted, as would have been proper in this case, plaintiff could properly have been required to amend his complaint within 14 days after notice of the order sustaining the motion for a definite statement, and ordered to attach a copy of the written instrument or state a valid reason for the failure to attach same. In the event a party fails to obey the order of the court, the court may strike the pleading to which the motion was directed, or make any other orders as it deems just, which would include involuntary dismissal with prejudice pursuant to Civ.R. 41(B)(1)." Id. at 186, 6 O.O.3d 171, 368 N.E.2d 1267; see, also, *Clerac, Inc. v. Shiekh* (May 14, 1998), Cuyahoga App. No. 72731, 1998 WL 241946.

{¶ 18} Although the record does not reflect that LLF filed a motion for a more definite statement, we also note that appellant did not offer any argument in opposition to this issue either in this court or in the court below. This leads us to the inescapable conclusion that the allegations contained in paragraph 16 of appellant's complaint alleged an *oral* contract and that the hand-written "agreement" appended to the complaint as Exhibit A is the only writing associated with the alleged "agreement" among the parties. Thus, while it would ordinarily be error for a trial court to dismiss a breach-of-contract claim for failure to comply with Civ.R. 10(D) without first moving for a more definite statement under Civ.R. 12(E), we find, under the facts of this case, that the only writing associated with the agreement alleged in appellant's complaint is the handwritten document attached as Exhibit A.

## C. Statute of Frauds

{¶ 19} The Statute of Frauds is codified at R.C. Chapter 1335 and requires certain agreements to be in writing. Pertinent to this case is R.C. 1335.05, which provides:

{¶ 20} "No action shall be brought whereby to charge the defendant * * * upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."

{¶ 21} Narrowly construed in Ohio, this statutory provision applies only to agreements that, by their terms, cannot be fully performed within a year and not to agreements that may possibly be performed within a year. See

*Sherman v. Haines* (1995), 73 Ohio St.3d 125, 127, 652 N.E.2d 698. Thus, where the time for performance under an agreement is indefinite, the agreement does not fall within the Statute of Frauds. Id.; see, also, *Nonamaker v. Amos* (1905), 73 Ohio St. 163, 172–175, 76 N.E. 949; 72 American Jurisprudence 2d (1974) 573, Statute of Frauds, Section 9; 2 Corbin on Contracts (1950) 534–535, Section 444.

{¶ 22} Paragraph 16 of appellant's complaint contains what appellant characterizes as the material terms of the agreement reached between him and Jack. It is evident from these averments that the agreement among the parties could not be performed within one year. Appellant's complaint references compensation allegedly due him under the parties' agreement that covered a minimum four-year time span from 1998 through 2002 and possibly beyond. It is equally true that no writing evidencing this agreement was attached to the complaint, leading us to conclude as we did that the only writing between appellant and Jack was the document appended to the complaint as Exhibit A. Appellant characterizes the writing that is attached to appellant's complaint as a "memorandum."

{¶ 23} A signed memorandum is sufficient to satisfy the Statute of Frauds so long as it (1) identifies the subject matter of the agreement; (2) establishes that a contract has been made; and (3) states the essential terms with reasonable certainty. *Kling v. Bordner* (1901), 65 Ohio St. 86, 61 N.E. 148, paragraph one of the syllabus; see, also, *N. Coast Cookies, Inc. v. Sweet Temptations, Inc.* (1984), 16 Ohio App.3d 342, 349, 16 OBR 391, 476 N.E.2d 388, citing 1 Restatement of the Law 2d, Contracts (1981) 336, Section 131. It does not have to be a formal memorial of the agreement, nor does it need to contain all of the terms of the agreement. Rather, a signed acknowledgment of an oral promise can qualify as a memorandum that satisfies the statute, even if the acknowledgment repudiates the oral promise. Restatement, supra, at 347, Section 133, Illustration 4. *N. Coast Cookies*, 16 Ohio App.3d at 349, 16 OBR 391, 476 N.E.2d 388.

{¶ 24} The writing appended to appellant's amended complaint fails to qualify as a memorandum under the statute. Although captioned as an "Agreement," there is nothing within this document that establishes that a contract had been made. On the contrary, the writing states that "the following outlines what we have discussed about the Landskroner Law Firm." What the parties *discussed* does not mean that the parties *agreed* on the terms outlined in the writing. Absent any terms sufficient to form a contract, the writing does not qualify as a memorandum under R.C. 1335.05 and, thus, the agreement between appellant and Jack is unenforceable as violative of the Statute of Frauds.

{¶ 25} Without an enforceable contract, appellant would not be entitled to contract remedies such as an accounting of profits and damages. Nor was

appellant entitled to seek an accounting for alleged violations of R.C. 1705.10 and 1705.11. These statutory provisions govern the allocation and distributions of profits among members of a limited liability company. Having already concluded that appellant was no longer a member of LLF, he is not entitled to seek an accounting for any alleged violations of these statutes. We find no error by the trial court in granting LLF's motion to dismiss as it pertains to appellant's claim for breach of contract and an accounting.

### IV. Conversion

{¶ 26} Appellant alleged that LLF has "obtained possession of monies" belonging to him and has therefore converted these funds for his own use in contravention of the parties' agreement.

{¶ 27} Conversion is "any exercise of dominion or control wrongfully exerted over personal property of another in denial of or under a claim inconsistent with his rights." *Okocha v. Fehrenbacher* (1995), 101 Ohio App.3d 309, 318, 655 N.E.2d 744; see, also, *Zacchini v. Scripps–Howard Broadcasting Co.* (1976), 47 Ohio St.2d 224, 226, 1 O.O.3d 129, 351 N.E.2d 454. "[E]xisting law generally allows actions for conversion to be based only upon the taking of identifiable, tangible personal property." *Wiltberger v. Davis* (1996), 110 Ohio App.3d 46, 55, 673 N.E.2d 628; see, also, *Davis v. Flexman* (S.D.Ohio 1999), 109 F.Supp.2d 776, 808. Because the property subject to appellant's conversion claim is not identifiable, personal property but rather comprises monies appellant claims are due and owing him under an agreement, appellant can prove no set of facts that would entitle him to recover on his claim for conversion, and dismissal was appropriate under Civ.R. 12(B)(6).

### V. Constructive Trust and Breach of Fiduciary Duty

{¶ 28} Appellant also alleged that he was entitled to have these same funds placed in constructive trust.

{¶ 29} " 'A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. The duty to convey the property may arise because it was acquired through fraud, duress, undue influence or mistake, or through a breach of a fiduciary duty, or through the wrongful disposition of another's property. The basis of the constructive trust is the unjust enrichment which would result if the person having the property were permitted to retain it. Ordinarily a constructive trust arises without regard to the intention of the person who transferred the property.' " *Bilovocki v. Marimberga* (1979), 62 Ohio App.2d 169, 171–172, 16 O.O.3d 369, 405

N.E.2d 337, quoting 5 Scott on Trusts, Resulting Trusts (4th Ed.1967), Section 404.2.

{¶ 30} Appellant's complaint does not allege that LLF acted in any manner that would entitle the court to impose a constructive trust. On the contrary, appellant alleges that LLF has "received certain monies or other property or assets of [appellant] in an effort to avoid the payment to [appellant] of his ratable share of such property or assets." Even after reviewing the preceding factual background contained in paragraphs 1 through 42 of appellant's complaint, there nothing in those averments that would support the imposition of a constructive trust. Appellant does not allege fraud, undue influence, duress, mistake, or the wrongful disposition of property.

{¶ 31} Appellant argued in opposition to dismissal that he was entitled to the imposition of a constructive trust because a fiduciary relationship "clearly exists" between him and Jack. Indeed, appellant's complaint sets forth a separate claim for breach of fiduciary duty. Specifically, appellant avers that he is owed the duty of good faith and fair dealing, the duty of loyalty, and "the duty to conduct all company business in the best interest of [appellant], and not for the sole or primary benefit of [Jack]." We see nothing in appellant's complaint that would lead us to conclude that a fiduciary relationship existed between appellant and Jack.

{¶ 32} The Ohio Supreme Court has defined a fiduciary relationship as a relationship "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." See *Ed Schory & Sons v. Francis* (1996), 75 Ohio St.3d 433, 442, 662 N.E.2d 1074, quoting *In re Termination of Employment of Pratt* (1974), 40 Ohio St.2d 107, 115, 69 O.O.2d 512, 321 N.E.2d 603. There is nothing in the complaint to indicate that the parties stood in a position of special confidence to each other or that one or the other exerted a position of superiority of influence over the other.[3] It is true that appellant and Jack are father and son and that, from time to time, one may have given advice to the other. Merely giving advice to another, however, does not create a fiduciary relationship. *Umbaugh Pole Bldg. Co. v. Scott* (1979), 58 Ohio St.2d 282, 287, 12 O.O.3d 279, 390 N.E.2d 320. Without more, we are unwilling to find the existence of a fiduciary relationship merely because a familial one existed.

{¶ 33} Nor does a fiduciary relationship exist between parties negotiating an arm's-length commercial transaction. *Blon v. Bank One, Akron, N.A.*

---

3. Although majority shareholders generally owe a fiduciary duty to minority shareholders, we have previously concluded that appellant's complaint makes clear that he no longer has any ownership interest in LLF.

(1988), 35 Ohio St.3d 98, 101, 519 N.E.2d 363. "[I]n business transactions where parties deal at arm's length, each party is presumed to have the opportunity to ascertain relevant facts available to others similarly situated and, therefore, neither party has a duty to disclose material information to the other." Id. Because the facts as alleged in appellant's complaint support this type of transaction, appellant's relationship could not be construed as fiduciary in nature. Indeed, prior to appellant's complete relinquishment of his interest in LLF, the parties owed fiduciary duties to one another during the time period when Jack held a majority interest and appellant a minority. See *Crosby v. Beam* (1989), 47 Ohio St.3d 105, 108, 548 N.E.2d 217. With the transfer of appellant's interest, however, those duties no longer existed. We see no error in the trial court's decision to grant LLF's motion to dismiss as it pertains to appellant's claims for the imposition of a constructive trust and breach of fiduciary duty. Appellant is unable to prove any set of facts that would justify relief for these claims.

## VI. Equitable Lien

{¶ 34} Appellant alleged in his complaint that he was entitled to an equitable lien on the property of LLF because of the "wrongful transfer of a portion [of appellant's] interest in the company property and assets * * *." A lien is a legal right or interest that a creditor has in another's property that usually exists until a debt or duty is satisfied. Black's Law Dictionary (7th Ed.1999) 933. A lien becomes equitable in character when satisfaction of the lien is sought from a particular fund or specific property under principles of equity. Id. at 934. Courts have defined "equitable lien" as "[an] express executory agreement in writing whereby a contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey, assign, or transfer the property as security, creates an equitable lien upon the property so indicated which is enforceable against the property in the hands not only of the original contractor, but of his purchasers or encumbrancers with notice. * * * The doctrine itself is clearly an application of the maxim 'equity regards as done that which ought to be done.'" *Syring v. Sartorious* (1971), 28 Ohio App.2d 308, 309–310, 57 O.O.2d 477, 277 N.E.2d 457. The salient features of an equitable lien, therefore, require (1) a debt, duty or obligation; (2) an identifiable res; and (3) an express or implied intent for that the property serve as security for the payment of a debt or obligation. See, also, *Morley v. First Fed. S. & L. Assn. of Warren* (June 12, 1998), 11th Dist. No. 97–T–0142, 1998 WL 553619.

{¶ 35} Appellant's complaint does not allege any set of facts that would lead us to conclude that he is entitled to an equitable lien on the property of LLF. Appellant seeks this remedy based on an alleged "wrongful transfer" of his

interest in company assets. His complaint contains no allegations that any identifiable company asset served as security for any debt owed him. Consequently, the trial court did not err in dismissing appellant's complaint as it pertains to his claim for equitable lien.

## VII.   Injunctive Relief

{¶ 36} According to the complaint, LLF established its own website in April 2002 separate and apart from that of appellant's. Appellant alleged that he is entitled to injunctive relief because LLF has "plagiarized material from [appellant's] website" and "is continuing to falsely represent [appellant's] achievements" as Jack's.

{¶ 37} In order to be entitled to injunctive relief, an aggrieved party must demonstrate that he or she will suffer irreparable harm and that there exists no adequate remedy at law. *Haig v. Ohio State Bd. of Edn.* (1992), 62 Ohio St.3d 507, 510, 584 N.E.2d 704; see, also, *Mid–America Tire, Inc. v. PTZ Trading Ltd.*, 95 Ohio St.3d 367, 2002-Ohio-2427, 768 N.E.2d 619, at ¶ 76. In general, a party is irreparably harmed and without an adequate remedy at law where an alleged injury is incapable of being measured in pecuniary terms. Id. at ¶ 79; see, also, *Restivo v. Fifth Third Bank* (1996), 113 Ohio App.3d 516, 521, 681 N.E.2d 484.

{¶ 38} Here, appellant has not alleged how or in what manner he would be harmed if injunctive relief was not granted. He merely alleged that LLF is making false representations on its website. Appellant's complaint contains no allegations as to how these allegedly false representation caused him any harm, let alone irreparable harm.

{¶ 39} Consequently, the trial court did not err in dismissing appellant's complaint as it pertains to his claim for injunctive relief.

## VIII.   Intentional Interference with Contracts and/or Business Opportunities

{¶ 40} Appellant alleges in his complaint that LLF interfered with existing contracts between appellant and several clients. LLF counters that it had an ethical obligation under the Ohio Code of Professional Responsibility to notify all of LLF clients of its imminent move and availability of continued representation.

{¶ 41} In *Fred Siegel Co., L.P.A. v. Arter & Hadden* (1999), 85 Ohio St.3d 171, 707 N.E.2d 853, the Supreme Court of Ohio reaffirmed *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 650 N.E.2d 863, and once again set forth the elements of tortious interference with contract. These elements include (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's

breach; (4) the lack of justification; and (5) resulting damages. The *Fred Siegel* court made clear, however, that compliance with Disciplinary Rules, or the lack thereof, does not excuse or serve as a basis for liability for tortious interference with contract.

{¶ 42} "[W]e reject the suggestion that the propriety of an attorney's conduct for purposes of a tortious interference analysis should be determined solely by application of the Disciplinary Rules. The purpose of disciplinary actions is to protect the public interest and to ensure that members of the bar are competent to practice a profession imbued with the public trust. * * * These interests are different from the purposes underlying tort law, which provides a means of redress to individuals for damages suffered as a result of tortious conduct. Accordingly, violation of the Disciplinary Rules does not, in itself, create a private cause of action. * * * The lower courts in this case correctly recognized that improper solicitation of clients in violation of the Disciplinary Rules does not independently constitute a tort." (Citations omitted.)

{¶ 43} Thus, to the extent that LLF bases its motion for dismissal on its compliance with the Ohio Code of Professional Responsibility, dismissal was improper. Nonetheless, LLF states in its brief that it notified appellant's clients "solely to confirm that those clients remained [appellant's] clients and to confirm [that LLF] would not be representing them in any capacity."

{¶ 44} A review of a motion to dismiss for failure to state a claim, however, looks only to the complaint. It is only when it is apparent from the four corners of the complaint that the complainant can prove no set of facts entitling him or her to relief that dismissal under Civ.R. 12(B)(6) is appropriate. Reiterating, appellant alleged in his complaint that he had existing contracts with clients and that LLF wrongfully interfered with those contracts. Accepting these allegations as true as we must, we are unable to conclude that appellant can prove no set of facts entitling him to relief. It is not possible to discern from the four corners of the complaint whether appellant, after relinquishing his ownership interest in LLF, provided legal services through LLF as its employee or independently through some other type of professional relationship.[4] Because the latter could arguably support a tortious-interference-with-contract claim, dismissal for failure to state a claim upon which relief can be granted was inappropriate.

## IX. Promissory Estoppel

{¶ 45} The doctrine of promissory estoppel seeks to prevent harm from the reasonable and detrimental reliance of one party on the false represen-

---

4. Appellant merely alleges that he and Jack "continued to work together in [LLF] and have maintained that relationship through the filing of this action."

tations of another. *Karnes v. Doctors Hosp.* (1990), 51 Ohio St.3d 139, 142, 555 N.E.2d 280. Quasi-contractual in nature, the doctrine may be invoked to form a contract when there is "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee * * * and which does induce such action or forbearance * * *." *Talley v. Teamsters Loc. 377* (1976), 48 Ohio St.2d 142, 146, 2 O.O.3d 297, 357 N.E.2d 44. An essential element of any action predicated on promissory estoppel is the existence of a false representation by the promisor. *Karnes,* 51 Ohio St.3d at 142, 555 N.E.2d 280.

{¶ 46} Although some courts have allowed a promissory-estoppel claim to bar a Statute of Frauds defense, this court has limited the application of promissory estoppel to cases where there has been either a misrepresentation that the Statute of Frauds' requirements have been complied with or a promise to make a memorandum of the agreement. See *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.* (1993), 87 Ohio App.3d 613, 627, 622 N.E.2d 1093. Appellant makes no such allegations in this case and he can, therefore, prove no set of facts that would entitle him to relief on this claim. As such, dismissal under Civ.R. 12(B)(6) was proper as to appellant's claim for promissory estoppel.

## X. Unjust Enrichment

{¶ 47} A claim for unjust enrichment arises out of a contract in law, or quasi-contract. *Hummel v. Hummel* (1938), 133 Ohio St. 520, 525, 11 O.O. 221, 14 N.E.2d 923. Such a contract is also not a true contract, but is an " 'obligation that is created by the law without regard to expressions of assent by either words or acts,' * * * and is imposed to prevent a party from retaining money or benefits which in justice and equity belong to another." (Citations omitted.) *Legros v. Tarr* (1989), 44 Ohio St.3d 1, 7–8, 540 N.E.2d 257. Civil liability "arises out of the obligation cast by law upon a person in receipt of benefits which he [or she] is not justly entitled to retain" without compensating the individual who conferred the benefits. *Hummel v. Hummel* (1938), 133 Ohio St. 520, 525, 11 O.O. 221, 14 N.E.2d 923.

{¶ 48} "[O]ne who has furnished materials or labor may recover the reasonable value of the materials or services. The promise to pay such reasonable value is implied. This is not in reliance upon the contract or by way of enforcement of the contract. It is the enforcement of an equitable right through the fiction called quasi contract. Though equitable in nature and origin, the right may be enforced at law." *Hughes v. Oberholtzer* (1954), 162 Ohio St. 330, 335, 55 O.O. 199, 123 N.E.2d 393. The purpose of a quasi-contract action is not to compensate the plaintiff for any loss or damage suffered by him or her but to compensate that plaintiff for the benefit conferred upon the defendant. Id.

Although equity "might compel a return of the article involved," the obligation that "is recognized and enforced in law is the obligation to pay the reasonable worth of the benefit received." Id. In order to recover on a claim of unjust enrichment, the party asserting the claim must demonstrate that (1) a benefit was conferred upon the recipient; (2) that the recipient had knowledge of that benefit; and (3) circumstances render it unjust or inequitable to permit the recipient to retain the benefit without compensating the party who conferred the benefit. *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 12 OBR 246, 465 N.E.2d 1298.

{¶ 49} Nothing in appellant's complaint could be construed as entitling appellant to relief for unjust enrichment. Appellant merely alleged that the "foregoing actions" eliminated appellant's "business" and that LLF took and obtained "for themselves the monetary value of such business by capturing [appellant's] clients and sources of referral of business."

{¶ 50} Because this type of quasi-contract action is based on unjust enrichment, the complainant must show such enrichment in the complaint. *Hughes v. Oberholtzer,* 162 Ohio St. at 336, 55 O.O. 199, 123 N.E.2d 393. Nothing in the complaint or its reference to the "foregoing actions" could be construed as demonstrating that appellant conferred a benefit upon Jack or LLF that went uncompensated. On the contrary, the pleadings in this case rely on express promises. This is not a situation where appellant is seeking to have the law create the fictional implied promise of the quasi-contract. Appellant does not seek to recover the value of something furnished the defendant. This court is mindful that a complaint need not contain every factual allegation that the complainant intends to prove, as such facts may not be available until after discovery is conducted. *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 144–145, 573 N.E.2d 1063. The complaint, however, "must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Fancher v. Fancher* (1982), 8 Ohio App.3d 79, 83, 8 OBR 111, 455 N.E.2d 1344; see, also, *Killilea v. Sears, Roebuck & Co.* (1985), 27 Ohio App.3d 163, 165, 27 OBR 196, 499 N.E.2d 1291. Appellant's complaint does neither.

{¶ 51} Consequently, dismissal was appropriate as it pertained to appellant's claim for unjust enrichment.

### XI. Unfair Competition

{¶ 52} Unfair competition ordinarily consists of representations by one person, for the purpose of deceiving the public, that his or her goods are

those of another. *Water Mgt., Inc. v. Stayanchi* (1984), 15 Ohio St.3d 83, 85, 15 OBR 186, 472 N.E.2d 715, citing *Drake Medicine Co. v. Glessner* (1903), 68 Ohio St. 337, 67 N.E. 722, and *Henry Gehring Co. v. McCue* (1926), 23 Ohio App. 281, 154 N.E. 171. It may also extend to "unfair commercial practices such as malicious litigation, circulation of false rumors, or publication of statements, all designed to harm the business of another." See *Henry Gehring,* supra.

{¶ 53} Appellant's complaint alleged that "the aforementioned conduct of [LLF and Jack] who conspired and who are together conspiring, aiding and abetting each other, constitutes a continuing violation of the common law business tort of unfair competition and trade practice." Although inartfully pleaded, we see nothing in appellant's complaint that would support a claim for unfair competition. First, appellant identifies no "business" that he has that could have arguably been passed off as that of LLF's. On the contrary, appellant concedes that he assigned his entire interest in LLF to Jack and that appellant continued to work at LLF until the parties terminated their relationship sometime in March/April 2002. The complaint contains no allegations that appellant maintained a separate business from that of LLF so as to cause harm to it by unfair competition. Even if the complaint contained such an allegation, appellant does not allege that LLF misrepresented its services to be those of appellant's or that LLF made other false representations about appellant to clients so as to cause appellant harm. The trial court did not err, therefore, in dismissing appellant's complaint as it pertains to his claim for unfair competition.

## XII. Misappropriation and Conversion of Trade Secrets

{¶ 54} Appellant alleges in his complaint that LLF's conduct "constitutes tortious conversion of proprietary and confidential information belonging to [appellant] in violation of Section 1333.51 of the Ohio Revised Code * * *."

{¶ 55} R.C. 1333.51, which prohibited the conversion of a trade secret, was repealed effective July 1, 1996. LLF stated as much in its motion to dismiss. Appellant, however, offered no argument in opposition. Because this repealed statute affords no relief for appellant's claim, the trial court appropriately dismissed this claim.

## XIII. Action on Loan

{¶ 56} Appellant alleges in his complaint that he lent Jack $80,000 in 1999 "for operating capital for [LLF]" and is still owed $6,000, plus interest.

{¶ 57} As stated previously in Section III(B), Civ.R. 10(D) requires that a copy of an account be attached to a complaint when a claim is based on that account. Nonetheless, the failure of a complainant to attach a copy does not subject that claim to dismissal under Civ.R. 12(B)(6). On the contrary, the proper procedure is to move for a more definite statement under Civ.R. 12(E).

See *Point Rental Co. v. Posani,* 52 Ohio App.2d at 186, 6 O.O.3d 171, 368 N.E.2d 1267.

{¶ 58} Although not specific as to the contents of the attachment, the Tenth District Court of Appeals held:

{¶ 59} "An account must show the name of the party charged. It begins with a balance, preferably at zero, or with a sum recited that can qualify as an account stated, but at least the balance should be a provable sum. Following the balance, the item or items, dated and identifiable by number or otherwise, representing charges, or debits, and credits, should appear. Summarization is necessary showing a running or developing balance or an arrangement which permits the calculation of the balance claimed to be due." *Brown v. Columbus Stamping & Mfg. Co.* (1967), 9 Ohio App.2d 123, 126, 38 O.O.2d 143, 223 N.E.2d 373; see, also, *AMF, Inc. v. Mravec* (1981), 2 Ohio App.3d 29, 31, 2 OBR 32, 440 N.E.2d 600.

{¶ 60} Because LLF did not move for a more definite statement as provided under Civ.R. 10(E), dismissal was not warranted for appellant's failure to attach a copy of the account.

{¶ 61} LLF also argued in its motion to dismiss that the loan has been "fully repaid and/or offset will be set aside for the time being." Reiterating, a motion to dismiss under Civ.R. 12(B)(6) tests the sufficiency of the pleadings. LLF's argument in opposition takes into account matters outside the pleadings and, as such, is inappropriate in a Civ.R. 12(B)(6) motion.[5]

{¶ 62} Accordingly, the trial court erred in granting LLF's motion to dismiss as it pertains to appellant's claim for "action on loan."

## XIV. Conclusion

{¶ 63} The trial court's order dismissing appellant's complaint is affirmed as it pertains to most of appellant's claims, with the exception of his claims for interference with contract and action on loan. As pertains to those claims, we reverse and remand to the trial court for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part
and cause remanded.

PATRICIA A. BLACKMON, P.J., and ANNE L. KILBANE, J., concur.

---

5. Although a trial court can convert a motion to dismiss to one for summary judgment with proper notice to the parties, appellant attached no evidence to support this argument that would have justified the conversion had the trial court been inclined to do so. See Civ.R. 12(B); *Petrey v. Simon* (1983), 4 Ohio St.3d 154, 4 OBR 396, 447 N.E.2d 1285, paragraph one of the syllabus.