DECISION AND JUDGMENT ENTRY
{¶ 1} The Estate of Juanita Workman filed an inventory of assets that included a savings account in the name of the Decedent's daughter, Janet Bailey. Bailey filed exceptions to the inclusion of this account in the inventory on the grounds that the money in the account had been a gift to her from the Decedent. After a hearing, the trial court ordered the Estate to file an amended inventory excluding the account in Bailey's name.
 {¶ 2} In this appeal, the Estate first argues Bailey failed to produce clear and convincing evidence that the lifetime transfer from a joint and survivorship account in the Decedent and Bailey's names was a gift to Bailey. However, Bailey benefited from a presumption that a transfer from a family member is intended as a gift. And Bailey presented evidence showing that the Decedent initiated the transfer and that she accepted it as a gift. Accordingly, the manifest weight of the evidence supports the trial court's judgment. The Estate also argues that the trial court ignored the presumption of undue influence that arises with the transfer of assets to a fiduciary of the donor. *Page 2 
However, the mere presence of a parent-child relationship is not sufficient to create a fiduciary relationship in this context. Because the Estate failed to put forward any evidence showing the existence of a fiduciary relationship, the presumption of undue influence never arose.
 {¶ 3} Second, the Estate argues that the trial court misapplied Evid. R. 804, which bars the introduction of the Decedent's statements unless they are used to rebut testimony by an adverse party. However, none of the statements complained of by the Estate are statements made by the Decedent; they were Bailey's own statements. Moreover, assuming that the trial court erred in this regard, the error was harmless because Bailey put forward other convincing evidence of a gift.
 {¶ 4} Finally, the Estate argues that the trial court erred in not imposing a constructive trust over Bailey's savings account. However, Bailey established that the transfer was a gift, and the Estate has not proven any grounds that would support the imposition of a constructive trust. Because we find no error, we affirm.
 I. Facts {¶ 5} Juanita Workman died on February 17, 2006, leaving a will that appointed her son, Thomas Workman, the executor of her estate and leaving all of her probate assets to him.[1] Thomas Workman filed an inventory of estate assets that listed, among other things, a joint and survivorship checking account in the amount of $5,210.65 in the names of the Decedent and her daughter, Janet Bailey, and an individual savings account in the amount of $32,621.03 in Bailey's name alone. Bailey filed exceptions to the inclusion of both accounts in the inventory, but it is this second account that is the subject of this appeal. *Page 3 
 {¶ 6} At the hearing on Bailey's exceptions, the Estate presented evidence that the Decedent had established a joint and survivorship savings account with Bailey. It also presented bank documents showing that this joint and survivorship account had been closed and that Bailey opened the individual savings account in her name alone with the proceeds of the joint and survivorship account. The teller who processed this transaction, Stephanie Perry, authenticated these bank documents and testified that these documents indicated that Bailey had authorized the transfer. On cross-examination, however, Perry testified that, even though the debit form showed that Bailey had authorized the withdrawal, it did not "technically" mean that Bailey had been the individual who had authorized it because, if Bailey and the Decedent had both been present, either could have authorized the transfer.
 {¶ 7} Bailey testified that the Decedent gave her the money in the joint and survivorship savings account. She explained that she met her mother at the bank on August 17, 2004, and that the Decedent withdrew the funds and gave them to her. Bailey then used the proceeds from the joint and survivorship account to open a new account in her name alone. Bailey specifically testified that she had not authorized the withdrawal from the joint and survivorship account, that it had not been her idea to withdraw those funds, and that she had not coerced her mother in any way to obtain the money. Bailey explained that she had never withdrawn any of the money given to her by the Decedent because she wanted it to be available should the Decedent ever need it. However, Bailey testified that she considered the money withdrawn from the joint and survivorship account her own money from that time forward. *Page 4 
 {¶ 8} On cross-examination, counsel for the Estate asked Bailey about prior deposition testimony in which she testified that, even though the money from the joint and survivorship account was no longer in the Decedent's name, she still considered it to be her mother's money. Bailey admitted making this statement, but on redirect testified that she had meant that the money had come from her mother. However, Bailey reiterated that the money placed in the account in her name alone had been a gift and that she had considered that money to be hers.
 {¶ 9} The trial court found that the Decedent arranged to meet Bailey at the bank and authorized the transfer to Bailey. The court also found that, even though the Decedent had knowledge that the funds were in Bailey's name alone for approximately two years, the Decedent never complained. Further, the court concluded that the transfer was a completed gift to Bailey, and it construed Bailey's testimony to mean that she had intended to preserve this gift for her mother's use should the Decedent need it out of a recognition that the money had once belonged to her mother. The trial court found no evidence of fraud, coercion, or undue influence. Finally, the trial court concluded that title to the joint and survivorship checking account in the amount of $5,210.65 passed to Bailey on the Decedent's demise. Therefore, it ordered the Executor to file an amended return omitting reference to the two accounts. The Estate filed this appeal.
 II. Assignments of Error {¶ 10} The Estate presents five assignments of error:
 1. "The Court committed reversible error in not following In Re Thompson, 66 OS 2d 433; 30 OOps 3d 371 as to the transfer of funds by Janet Bailey during the decedent's lifetime from a joint and survivorship account." *Page 5 
 2. "The court committed reversible error in not following Studniewski v. Krzyza[nowski] (1989), 65 OApp3d 628; 584 NE 2d 1297, which requires clear and convincing evidence of a present intention of a donor to relinquish ownership, dominion and control especially where a confidential relation exists between donor and donee."
 3. "The court committed reversible error in placing the burden of proof in disproving a gift upon the executor, rather than the donee. Studniewski v. Krzyza[nowski] (1989), 65 OApp3d 628."
 4. "The court erred in interpreting the dead man's statute, Ohio Rules of Evidence, Rule 804, and in deciding decedent made a gift to Janet Bailey without clear and convincing evidence by Janet Bailey."
 5. "The court committed reversible error in not ruling the funds formerly in Account No. 6646 to be an asset of the decedent's estate."
Because each of these assignments of error address the question whether the trial court erred in sustaining exceptions to including savings account in the inventory of Estate assets, we address them together.
 III. The Objection to the Inventory A. The Gift {¶ 11} The Estate argues that the trial court erred in excluding the funds in Bailey's individual account from the inventory of Estate assets. Particularly, it argues that the court failed to follow In reEstate of Thompson (1981), 66 Ohio St.2d 433, 423 N.E.2d 90, paragraph one of the syllabus, which held that "[a] joint and survivorship account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." Similarly, the Estate cites the Sixth District Court of Appeals' decision in Studniewski v. Krzyzanowski (1989), 65 Ohio App.3d 628,584 N.E.2d 1297, for the proposition that "there must exist clear and convincing evidence of a present intention on the part of the donor to transfer title and right of possession as *Page 6 
well as evidence of a completed delivery of the subject matter of the gift with the donor relinquishing ownership, dominion and control over it." Id. at 632. Thus, the Estate contends that Bailey had the burden of proving that the Decedent made an inter vivos gift to her. Also relying on Studniewski, the Estate argues that there was a presumption of undue influence in this case because Bailey had a fiduciary relationship with the Decedent and that the trial court improperly shifted the burden to disprove the existence of the gift to the Estate. The Estate argues that there is no evidence that the Decedent gave the funds withdrawn from the joint and survivorship account to Bailey.
 {¶ 12} The Revised Code requires the executor of an estate to file an inventory and appraisal of the estate of the decedent in the probate court and permits any interested person to file exceptions to the assets included in that inventory. R.C. 2115.02; R.C. 2115.16. A hearing on exceptions to inventory under R.C. 2115.16 is a summary proceeding conducted by the probate court to determine whether an executor has included in a decedent's estate the assets that the decedent owned at the time of his or her death. In re Estate of Gottwald (1956),164 Ohio St. 405, 131 N.E.2d 586, paragraph one of the syllabus.
 {¶ 13} "An `exceptions' hearing is a special proceeding. An entry overruling or sustaining objections to an account is a final appealable order." In re Estate of Counts (Sept. 18, 2000), Ross App. No. 99CA2507,2000 WL 1572710, citing Sheets v. Antes (1984), 14 Ohio App.3d 278,470 N.E.2d 931. The standard of review on appeal from a ruling on exceptions to an inventory is abuse of discretion. In re Estate of Scott,164 Ohio App.3d 464, 2005-Ohio-5917, 842 N.E.2d 1071, at ¶ 2; In re Estate ofShelton, 154 Ohio App.3d 188, 2003-Ohio-4593, 796 N.E.2d 955, at ¶ 8;In re Estate of Platt, *Page 7 148 Ohio App.3d 132, 2002-Ohio-3382, 772 N.E.2d 198, at ¶ 13;Counts, supra. An abuse of discretion involves far more than a difference in opinion. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such a determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias. State v. Jenkins
(1984), 15 Ohio St.3d 164, 222, 473 N.E.2d 264, 313, certiorari denied (1985), 472 U.S. 1031; Huffman v. Hair Surgeon, Inc. (1985),19 Ohio St.3d 83, 87, 482 N.E.2d 1248, 1252.
 {¶ 14} Generally, as the party disputing the inventory, Bailey had the burden of going forward with evidence that challenged the estate's inventory. In re Estate of Haas, Franklin App. No. 07AP-512,2007-Ohio-7011, at ¶ 43; Napier v. Watkins, Montgomery App. No. 20122,2004-Ohio-4685, at ¶ 15. Furthermore, Bailey bore the burden of proving by clear and convincing that the transfer of funds from the Decedent was an inter vivos gift. Hass at ¶ 38; Studniewski, 65 Ohio App.3d at 632. "Clear and convincing evidence" is evidence which will provide in the mind of the trier of fact, a firm belief or conviction as to the facts sought to be established. State v. Eppinger, 91 Ohio St.3d 158, 164,2001-Ohio-247, 743 N.E.2d 881; State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54. It is considered a higher degree of proof than a mere "preponderance of the evidence," the standard generally utilized in civil cases, but, it is less stringent than the "beyond a reasonable doubt" standard used in criminal trials. The standard of review for weight of the evidence issues, even where the burden of *Page 8 
proof is "clear and convincing" retains its focus upon the existence of "some competent, credible evidence." See Schiebel, supra.
 {¶ 15} In determining whether the trial court's decision on an exception to the inventory is against the manifest weight of the evidence, we have explained that:
 this court is not permitted to substitute its judgment for that of the trial court. As a reviewing court, we are guided by the presumption that the findings of the trial court are correct. The trial court is in the best position to view witnesses and their demeanor and to use its observations in weighing the credibility of the proffered testimony. Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276. Under this standard, judgments supported by some competent, credible evidence, going to all the essential elements of the case, will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus.
 In the event that the evidence is susceptible to more than one interpretation, the appellate court must construe it consistently with the trial court's judgment. Gerijo, Inc. v. City of Fairfield (1994), 70 Ohio St.3d 223, 226, 638 N.E.2d 533, 536.
Counts, supra.
 {¶ 16} The Estate argues that Bailey failed to produce clear and convincing evidence that a gift had occurred. "The requisite elements of a valid inter vivos gift include: `(1) intent on the part of the donor to make an immediate gift of particular property to the donee and to part with dominion and control over the subject of the gift; (2) delivery of the subject of the gift; and (3) acceptance of the gift.'"Ervin v. Ervin, Adams App. No. 06CA822, 2006-Ohio-5460, at ¶ 15, quotingWheeler v. Martin, Washington App. No. 04CA15, 2004-Ohio-6936, at ¶ 16
(plurality). There is a presumption that a transfer of assets to a family member is intended as a gift. Creed v. Lancaster Bank (1852),1 Ohio St. 1, at paragraph three of the syllabus ("But where such purchase and conveyance is made by a man to a member of his own family, the *Page 9 
presumption is that the property is intended as a gift or advancement."); Davis v. Davis, Stark App. 2003CA00243, 2004-Ohio-820, at ¶ 8 ("When a transaction is made that benefits a family member, there is a presumption that the transaction was intended as a gift." (internal quotation omitted)). Although it did not mention this presumption, the trial court found that the Decedent had authorized the transfer. Bailey testified that she met her mother at the bank, that she had not authorized the transfer or coerced her mother into making it, and that she believed her mother had given her the money.
 {¶ 17} The Estate failed to rebut the family-gift presumption. It relied on Bailey's deposition testimony that she had considered the money to be her mother's until her death and the fact that the bank documents showed Bailey as the person who authorized the transfer of funds. However, Bailey testified that she considered the money to be hers at the time of the transfer and explained her deposition testimony as indicating the source of the money. The trial court concluded that Bailey meant that the money was her mother's in a moral sense, not a legal sense. Furthermore, Perry, the bank teller who processed the transfer of funds, testified that the fact that the bank documents listed Bailey as the person authorizing the transfer did not necessarily mean that the Decedent had not authorized the transfer. Essentially, the Estate argues that the trial court erred in crediting Bailey's testimony at trial over her deposition testimony and in crediting Bailey's testimony that she did not authorize the transfer over the bank documents that suggest she did. Thus, the Estate is ultimately challenging the credibility of the evidence with its arguments, an issue that we leave to the trial court, which "is in the best position to view witnesses and their demeanor and to use its observations in weighing the credibility of the proffered testimony." Seasons Coal, *Page 10 10 Ohio St.3d at 80. Given the family gift presumption and Bailey's own testimony, some competent evidence supports the trial court's conclusion that Bailey met her burden to prove that the transfer of assets was a gift.
 B. The Burden of Proof {¶ 18} Next, the Estate argues that the trial court erred in placing the burden of proof concerning the existence of the gift upon the Estate rather than Bailey. The Estate contends that there is no evidence of a gift and that the trial court improperly relied on the lack of any evidence of a complaint by the Decedent that Bailey had her money. However, as noted above, Bailey met her burden of proving the existence of a gift, both through evidence and the family-gift presumption. Bailey argues that the lack of a complaint by the Decedent in her lifetime is relevant to establishing the existence of a gift. She relies on the Eleventh District Court of Appeals' holding in Estate of Platt, supra, for the proposition that "any challenge to an unauthorized withdrawal by the beneficiary on a joint [and] survivorship account must be made prior to the death of the depositor. After the depositor dies, all money allegedly misused by the beneficiary would be the property of the beneficiary anyway." Id. at ¶ 18. However, because we believe there is sufficient evidence of a gift for Bailey to meet her burden, we need not determine whether to adopt the holding of Estate of Platt.[2] *Page 11 
 C. Undue Influence {¶ 19} The Estate next argues that the trial court ignored the presumption of undue influence that arises when a gift is given by the decedent to a person in a fiduciary relationship with the decedent. The Estate contends that Bailey has failed to rebut this presumption and, therefore, has failed to prove the existence of a gift by clear and convincing evidence. The court in Studniewski held that, "[w]here a confidential or fiduciary relationship exists between donor and donee, the transfer is looked upon with some suspicion that undue influence may have been brought to bear on the donor by the donee."Studniewski, 65 Ohio App.3d at 632. Thus, where there has been a gift to a fiduciary, "a presumption [of undue influence] arises, and the party with the superior position must go forward with proof on the issue of undue influence and fairness of the transaction while the party attacking a completed gift on that basis retains the ultimate burden of proving undue influence by clear and convincing evidence." Id.
 {¶ 20} Here, Bailey has proven that there was completed gift. However, before the presumption of undue influence arises, the Estate must first make a prima facie case that the person receiving the gift was in a fiduciary relationship with the decedent. The Estate points to no evidence in the record showing that there was such a fiduciary relationship between Bailey and her mother. Nor does Bailey cite any authority showing that a mother-daughter relationship can serve as the basis for a fiduciary relationship. In fact, Ohio courts have held that a parent-child relationship, without more, is insufficient to create a fiduciary relationship. See McAdams v. McAdams (1909), 80 Ohio St. 232,243-44, 88 N.E. 542 ("The relation of parent and son, even if the latter *Page 12 
should occupy the relation of attorney also, will not raise a presumption of undue influence. * * * `In the case of a gift from a child to a parent undue influence may be inferred from the relation of the parties, but never where the gift is from the parent to the child.'" (quoting Bigelow on Fraud, 368)); Landskroner v. Landskroner,154 Ohio App.3d 471, 2003-Ohio-4945, 797 N.E.2d 1002, at ¶ 32 ("There is nothing in the complaint to indicate that the parties stood in a position of special confidence to each other or that one or the other exerted a position of superiority of influence over the other. It is true that appellant and Jack are father and son and that, from time to time, one may have given advice to the other. Merely giving advice to another, however, does not create a fiduciary relationship. Without more, we are unwilling to find the existence of a fiduciary relationship merely because a familial one existed." (footnote and citation omitted));Kingston Nat. Bank v. Stulley (Sept. 28, 1990), Pike App. 443,1990 WL 155741 ("However, we think a familial relationship between an officer of a creditor bank and one of its borrowers is insufficient, standing alone, to create a fiduciary relationship.").
 {¶ 21} Although we note that Bailey received a power of attorney over her mother, this occurred one month after the transfer from the joint and survivorship account. Bailey's testimony in the deposition suggests that even after Bailey received the power of attorney, the Decedent continued making her own financial decisions. Thus, there is no evidence of incompetence or susceptibility to undue influence, and the presumption of undue influence did not arise. Therefore, the burden of production did not shift to Bailey, and the Estate retained the burden of proving that the gift to Bailey was invalid on the basis of undue influence. Having put forward no evidence, the Estate failed to meet this burden. *Page 13 
 D. Hearsay {¶ 22} Next, the Estate argues that the trial court misinterpreted Evid. R. 804 in finding that the Decedent made a gift to Bailey. Evid. R. 804(B)(5) provides that a statement made by a decedent or an incompetent person is not excluded by the hearsay rule where all of the following apply:
 (a) the estate or personal representative of the decedent's estate or the guardian or trustee of the incompetent person is a party;
 (b) the statement was made before the death or the development of the incompetency;
 (c) the statement is offered to rebut testimony by an adverse party on a matter within the knowledge of the decedent or incompetent person.
Thus, statements made by a decedent may be admitted in evidence to rebut testimony by an adverse party on a matter that was within the knowledge of the decedent.
 {¶ 23} The Estate points only to Bailey's testimony that she did not schedule the meeting with her mother at the bank and that Perry, the bank teller, did not schedule that meeting. Basically, Bailey testified that neither she nor Perry arranged the meeting but that some person in the room — that is, the Decedent — arranged the meeting and authorized the transfer. The Estate argues that the trial court used this testimony "to assume * * * that [the Decedent] called the bank meeting and made a gift." However, none of the statements complained of by the Estate are statements by the Decedent. Furthermore, even if we assumed that the trial court erred in admitting this evidence, any error was harmless. Here, Bailey testified that she met her mother at the bank, that she did not authorize the transfer of funds out of the account, that the funds were transferred from the joint and survivorship account to Bailey's individual account, and that this transfer was a gift. Under the family gift presumption, we must presume that *Page 14 
the Decedent intended this transfer to be a gift. Thus, even without testimony that the Decedent authorized the transaction, there was competent, credible evidence that a gift occurred.
 E. Constructive Trust {¶ 24} Finally, the Estate argues that the trial court erred in not imposing a constructive trust on the money transferred from the joint and survivorship account. As the Supreme Court of Ohio has recently explained,
 [a] constructive trust is a "`trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice.'" (Footnotes omitted.) Ferguson v. Owens (1984), 9 Ohio St.3d 223, 225, 9 OBR 565, 459 N.E.2d 1293, quoting 76 American Jurisprudence 2d (1975) 446, Trusts, Section 221. A constructive trust is considered a trust because "`[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.'" Id. at 225, 9 OBR 565, 459 N.E.2d 1293, quoting Beatty v. Guggenheim Exploration Co. (1919), 225 N.Y. 380, 386, 389, 122 N.E. 378.
Estate of Cowling v. Estate of Cowling, 109 Ohio St.3d 276,2006-Ohio-2418, 847 N.E.2d 405, at ¶ 18. "`[A] constructive trust may also be imposed where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud.'" Id. at ¶ 19, quoting Ferguson,9 Ohio St.3d at 226, 459 N.E.2d 1293. The party seeking to have a constructive trust imposed bears the burden of proof by clear and convincing evidence. Id. at ¶ 20, citing Univ. Hosps. of Cleveland, Inc. v. Lynch,96 Ohio St.3d 118, 2002-Ohio-3748, 772 N.E.2d 105, paragraph three of the syllabus. *Page 15 
 {¶ 25} The Estate's sole argument for imposing a constructive trust is that, "[h]ad Bailey waited until after her mother dies she would have been entitled to the account. Her impatience, perhaps, was triggered by a suspicion that her mother might change the account in some way Bailey did not want. Why would her mother give away her sole liquid asset when she was terminally ill with cancer? And when her needs were greater than ever?" Thus, the Estate argues that the trial court should have imposed a constructive trust on the transferred funds on the basis that Bailey misappropriated them. However, we have already held that the trial court's finding that the Decedent gave those funds to Bailey is supported by credible, competent evidence. The Estate offers speculation that the Decedent would not have given away this money because of her illness and financial needs. It also relies upon the bank debit slip that shows Bailey as the account holder who authorized the transfer as evidence of misappropriation. However, Bailey testified that she had not authorized the transfer, and the bank teller Perry testified that Bailey's name on the slip did not preclude the fact that the Decedent was present and authorized the transaction. Furthermore, the Estate has put forward no evidence that Bailey procured the transfer through fraud, undue influence, or any other equitable ground that would support imposition of a constructive trust. Because the Estate did not meet its burden in proving the appropriateness of a constructive trust, the trial court did not err by not imposing one.
 {¶ 26} For these reasons, we overrule the Estate's assignments of error and affirm the judgment below.
 JUDGMENT AFFIRMED. *Page 16 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court, Probate-Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. McFarland, J.: Concur in Judgment and Opinion.
[1] Thomas Workman is Janet Bailey's half-brother.
[2] In its Reply brief, the Estate argues that we should disregard Bailey's argument regarding Estate of Platt because it has been raised for the first time on appeal. However, we may affirm the judgment below if it is right for any reason. See Myers v. Garson (1993),66 Ohio St.3d 610, 614 N.E.2d 742. ("[A] reviewing court is not authorized to reverse an otherwise correct judgment because erroneous arguments were made by the moving party."); Joyce v. General Motors Corp. (1990),49 Ohio St.3d 93, 96, 551 N.E.2d 172 (same); In re Estate of Baker, Lorain App. No. 07CA009113, 2007-Ohio-6549, at ¶ 15 ("An appellate court shall affirm a trial court's judgment that is legally correct on other grounds, that is, one that achieves the right result for the wrong reason, because such an error is not prejudicial."); Reynolds v. Budzik (1999),134 Ohio App.3d 844, 732 N.E.2d 485 n. 3 ("`A reviewing court may look into the record and if the judgment being reviewed on appeal is right for any reason, it is the duty of the reviewing court to affirm it, as is graphically shown by holdings on a wide variety of situations.'" (quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 683)). A corollary of this rule is that the appellee may defend the judgment below by raising arguments for its correctness for the first time on appeal. *Page 1