JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Robyn Gordon, appeals the judgment of the Cuyahoga County Court of Common Pleas, granting summary judgment to defendants-appellees, Terrance Dziak and the city of Lakewood ("city"). Having reviewed the record and the pertinent law, we affirm. *Page 3 
 {¶ 2} On October 26, 2005, Gordon filed a complaint against Dziak and the city alleging that she sustained personal injuries on August 22, 2004, when she tripped and fell on Dziak's sidewalk, injuring herself. The complaint averred that on May 20, 2004, the city notified Dziak that violations regarding portions of the sidewalk adjacent to his residential property, at 2105 Lincoln Avenue, needed to be corrected within thirty days. The complaint further stated that Dziak did not repair the sidewalk and the city did not enforce the Lakewood Municipal Ordinance 903.10 ("ordinance"), which sets forth a property owners' duty to repair and maintain sidewalks.
 {¶ 3} Dziak and the city filed separate answers. Each later respectively filed motions for summary judgment against Gordon, to which Gordon filed a combined memorandum in opposition. Dziak and the city argued that the one-inch defect in the sidewalk was insubstantial as a matter of law and that there were no attendant circumstances existing to render the defect substantial. The city also argued that it was immune from liability under R.C. 2744.
 {¶ 4} Dziak and the city attached a transcript of Gordon's deposition to their respective motions for summary judgment. Gordon testified that on August 22, 2004, the weather was warm and sunny when she went for a walk with her friend, Tom Jacquet. Between 11:30 a.m. and noon, they walked side-by-side at a "[g]ood pace." As they approached the intersection of Lincoln Avenue and Athens Avenue, "* * * [Gordon] was looking at the light * * * to see if it was red or green so [she] knew if *Page 4 
[she] could cross the street. And [her] left foot caught the sticking up of the sidewalk, and [she] went flying and landed almost in the intersection." Jacquet helped her stand up and walk to his house.
 {¶ 5} Gordon testified that Jacquet called the police and they escorted her and Jacquet to the hospital. On the way, they stopped at the scene. Gordon said that Jacquet showed the officers where she fell. Gordon was asked at her deposition:
 {¶ 6} "Q. And the police report goes on to say, [t]he sidewalk was constructed of concrete and was raised approximately one inch.[1]
Would that be a fair statement also?
 {¶ 7} "A. Yes. That was the policeman's statement, not my statement; correct?
 {¶ 8} "Q. Right. I'm just asking that —
 {¶ 9} "A. Uh-huh.
 {¶ 10} "Q. Do you have any basis for disagreeing with the policeman's statement?
 {¶ 11} "A. No."
 {¶ 12} Gordon admitted that she had walked the same route "a couple" of times prior to the incident, but she could not recall if she had walked on the same *Page 5 
sidewalk where she fell or across the street. She stated that there was no traffic in the area, nor were there people on the same side of the street when she fell. She was not carrying anything, or listening to head phones, and she was wearing tennis shoes. She did not recall having any difficulty seeing because of the sun.
 {¶ 13} In his affidavit, which was attached to his motion for summary judgment, Dziak asserted that: he had owned and resided at 2105 Lincoln Avenue for twenty-nine years; he had no knowledge of anyone else tripping and falling on his sidewalk; and he was unaware of any circumstances that would have prevented the conditions of his sidewalk from being open and obvious. He further averred that any uneven conditions on his sidewalk, "were insubstantial and consisted of nothing more than minor variations in elevation." He also stated that he took no affirmative action to create any uneven sidewalk condition.
 {¶ 14} Gordon supported her combined memorandum in opposition to defendants' motions for summary judgment, with her own and Jacquet's affidavits.[2] She also attached the depositions of Dziak, the city inspector, Fred Billey ("city inspector"), and the city supervisor, Kevin Chisar ("city supervisor"). *Page 6 
 {¶ 15} In her affidavit, Gordon averred that on August 22, 2004, she "had no reason to look for defects in the sidewalk because [she] trusted that [Dziak] would not permit a defect to exist or if [he] had not yet repaired a defect, that an appropriate warning would have been posted until the defect had been repaired. Moreover, even if [she] had been specifically looking for a defect, such a defect was not observable. The sidewalk was obscured by sunlight and shadows, and the defect was neither open nor obvious." She averred that she sustained injuries to her right hand, shoulder, and knee, and had to have arthoscopic surgery on her knee as a result of the fall.
 {¶ 16} Jacquet stated in his affidavit that "[t]he sidewalk in question was obscured by sunlight and shadows, and the defect in the sidewalk was neither open nor obvious. The sidewalk defect varied in height from the right or street side to a height of at least two inches on the left or grass side where [Gordon] fell." Jacquet attached three photographs to his affidavit, which he stated reflected the weather condition and the sidewalk on the date Gordon tripped and fell.
 {¶ 17} Dziak testified at his deposition that in 2002, he received a letter from the city, notifying him to repair his sidewalk, but he did not fix it because he did not believe it was unsafe. He received a second letter to repair his sidewalk in 2004 and again, did not fix it.
 {¶ 18} At his deposition, the city inspector testified that in 2002 and 2004, he sent letters to Dziak, notifying him that his sidewalk was a "hazard" and needed to *Page 7 
be repaired within thirty-one days. He stated that when homeowners failed to repair their sidewalks, the city could make the repairs and then bill the owners. He said that the city did not fix Dziak's sidewalk or enforce the ordinance because many residents on Lincoln Avenue complained about the citations. He stated that a supervisor told him to "back off enforcing the ordinance.
 {¶ 19} The city inspector also asserted that an ordinance violation is a one-inch rise or more, a hazardous crack or hole, and an obstruction on the city's right-of-way which interferes with safe passage.[3] He stated, "[Dziak's] sidewalk was a tripping hazard and had rises." He agreed that the police report stated that the rise was approximately one inch, but he would not disagree if someone else suggested that it was closer to two inches.[4]
 {¶ 20} The city supervisor testified at his deposition that the city did not have money to fix homeowners' sidewalks and that homeowners were responsible for repairing their own sidewalks. He also agreed that the city records did not indicate how large the defect was on Dziak's sidewalk. *Page 8 
 {¶ 21} On September 20, 2006, the trial court granted Dziak and the city's motions for summary judgment, stating, "reasonable minds can come to only one conclusion regarding the alleged sidewalk defect. Specifically, that the difference in the sidewalk elevation in this case is less than two inches. * * * The plaintiff has failed to demonstrate that the attendant circumstances were present, or if any attendant circumstances were present, that any alleged attendant circumstances created a greater than normal risk of injury. Accordingly, this court finds as a matter of law that the alleged sidewalk defect is insubstantial, and therefore defendants are not liable for plaintiff's injuries and the defendants are entitled to judgment as a matter of law."
 {¶ 22} It is from this judgment that Gordon now appeals, raising a single assignment of error:
 {¶ 23} "The trial court erred in granting defendants/appellees' motions for summary judgment."
 STANDARD OF REVIEW {¶ 24} We review an appeal from summary judgment under a de novo standard. Baiko v. Mays (2000), 140 Ohio App.3d 1, 10. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.Northeast Ohio Apartment Assn. v. Cuyahoga Cty. Bd. of Commrs. (1997),121 Ohio App.3d 188, 192.
 {¶ 25} Civ.R. 56(C) provides that before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be *Page 9 
litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." State ex rel. Duganitz v. Ohio Adult Parole Auth. (1996),77 Ohio St.3d 190, 191.
 {¶ 26} The Ohio Supreme Court stated in Dresher v. Burt (1996),75 Ohio St.3d 280, 296, "the moving party bears the initial responsibility of informing the trial court of the basis of the motion, and identifyingthose portions of the record which demonstrate the absence of a genuineissue of fact on a material element of the nonmoving party's claim. The `portion of the record" to which we refer are those evidentiary materials listed in Civ. R. 56(C), such as pleadings, depositions, answers to interrogatories, etc., that have been filed in the case." (Emphasis sic.)
 {¶ 27} If the moving party satisfies this burden, then the nonmoving party has the burden, pursuant to Civ.R. 56(E), to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then as a matter of law, summary judgment is appropriate. Civ.R. 56(E).
 GOVERNMENTAL IMMUNITY {¶ 28} Although the trial court did not address whether the city is immune from liability pursuant to R.C. 2744, we shall consider it first as the issue was raised both before the trial court and this appellate court, and we are reviewing this matter under a de novo standard. *Page 10 
 {¶ 29} "The Political Subdivision Tort Liability Act is codified in R.C. Chapter 2744 and was enacted in response to the judicial abolishment of the common-law doctrine of sovereign immunity for municipal corporations * * *." Haynes v. Franklin, 95 Ohio St.3d 344,2002-Ohio-2334, at _9. On April 9, 2003, prior to this incident, the Ohio legislature amended R.C. 2744.02(B)(3) by removing the word "sidewalk" from the statute.
 {¶ 30} The Ohio Supreme Court stated in Colbert v. Cleveland,99 Ohio St.3d 215, 2003-Ohio-3319, at _7-9:
 {¶ 31} "Determining whether a political subdivision is immune from tort liability pursuant to Chapter 2744 involves a three-tiered analysis. * * * The first tier [under R.C. 2744.02(A)(1)] is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. * * * However, that immunity is not absolute. * * *
 {¶ 32} "The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. * * *
 {¶ 33} "If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability." *Page 11 
 {¶ 34} In this case, there is no dispute that the city is a political subdivision to which the general rule of immunity applies. The issue is whether any of the exceptions in R.C. 2744.02(B)(1)-(5) apply. Gordon argues that pursuant to R.C. 2744.02(B)(3) and R.C. 723.01, the city is not immune from liability, because it is required to maintain its sidewalks free from nuisances. The city argues that this exception to immunity does not apply, because prior to this incident, the Ohio legislature amended R.C. 2744.02(B)(3) and the city is not liable for maintaining sidewalks.
 {¶ 35} R.C. 2744.02(B)(3) states in pertinent part, "[e]xcept as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions frompublic roads * * *." (Emphasis added.)
 {¶ 36} R.C. 2744.01(H) defines "public roads" as, "public roads, highways, streets, avenues, alleys, and bridges within a political subdivision. * * *" Hence, sidewalks are not considered public roads.
 {¶ 37} While R.C. 723.01 makes a municipal corporation responsible for the care, control, and supervision of public sidewalks, the statute makes it clear that liability or immunity for these matters are still determined by R.C. 2744.02. Burns v. Upper Arlington, 10th Dist. No. 06AP-680, 2007-Ohio-797, at _9. In Burns, the court concluded that the city was immune from liability when a pedestrian tripped and fell *Page 12 
over a manhole cover that was part of the city's sidewalk because, "the General Assembly had specifically removed sidewalk from its coverage." Id. at _9-10.
 {¶ 38} In the instant case, Gordon's injury occurred on August 22, 2004, after the General Assembly amended R.C. 2744.02(B)(3) by removing the word "sidewalk" from the statute. Thus, the city is entitled to immunity under R.C. 2744.02(A)(1), because R.C. 2744.02(B)(3) does not impose liability on the city for the negligent maintenance of its public sidewalks and no other exceptions pursuant to R.C. 2744.02(B)(1)-(5) apply.
 {¶ 39} Gordon also contends that pursuant to R.C. 2744.03(A)(3), the city is not immune from liability because the city inspector and supervisor did not enforce the ordinance. However, this argument is misplaced. R.C. 2744.03(A)(3) does not impose liability on a political subdivision rather; it is a defense or immunity for a political subdivision if an exception to R.C. 2744.02(B) applies.
 LIABILITY OF HOMEOWNER
A. Two-Inch Rule {¶ 40} Next, we will address if there is a genuine issue of material fact as to whether the defect in the sidewalk was greater than two inches. Gordon argues that reasonable minds could differ as to whether there was a substantial defect in the sidewalk, greater than two inches. We disagree.
 {¶ 41} Courts have developed the"two-inch rule," which provides that a difference in elevation of two inches or less in height between two adjoining portions *Page 13 
of sidewalk or walkway is considered insubstantial as a matter of law and thus is not actionable. Stockhauser v. Archdiocese ofCincinnati (1994), 97 Ohio App.3d 29, 33, citing Cash v. Cincinnati
(1981), 66 Ohio St.2d 319. Private landowners are not liable as a matter of law for minor defects in sidewalks and walkways because these are commonly encountered and pedestrians should expect such variations.Stockhauser at 32, citing Kimball v. Cincinnati (1953),160 Ohio St. 370, 373.
 {¶ 42} In the instant case, Gordon testified that she did not disagree with the police report, which stated that the sidewalk was raised approximately one inch. Dziak, the city inspector, and the city supervisor never testified as to the height difference in the sidewalk. The city inspector said he would not disagree if someone suggested that the sidewalk rise was close to two inches. Jacquet stated in his affidavit that the sidewalk where Gordon fell was "at least two inches[.]"
 {¶ 43} The law is clear that a defect of two inches or less is considered insubstantial as a matter of law. There is no evidence that the defect was actually greater than two inches. Thus, we conclude that Gordon failed to establish the existence of any genuine issue of material fact as to whether the defect in the sidewalk was greater than two inches.
B. Attendant Circumstances/Open and Obvious {¶ 44} Next, we will address if any attendant circumstances could convert the minor defect into a substantial defect, thus creating a possible action. Cash, at 324. *Page 14 
Gordon argues that there is a genuine issue of material fact as to whether the defect was open and obvious because the sunlight and shadows obscured her vision of it.
 {¶ 45} The open-and-obvious doctrine provides that owners do not owe a duty to persons entering their premises regarding dangers that are open and obvious. Armstrong v. Best Buy Co., Inc., 99 Ohio St.3d 79,2003-Ohio-2573, at _14, citing Sidle v. Humphrey (1963),13 Ohio St.2d 45, paragraph one of the syllabus. The rationale underlying this doctrine is "that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." Simmers v. Bentley Constr.Co. (1992), 64 Ohio St.3d 642, 644.
 {¶ 46} Even when a pedestrian does not actually notice the defect until after he or she falls, no duty exists when the pedestrian could have seen the defect if he or she had looked. Haymond v. BPAmerica, 8th Dist. No. 86733, 2006-Ohio-2732, at _16. Courts must consider whether the defect itself was observable. Id. However, attendant circumstances may create a genuine issue of material fact as to whether a danger was open and obvious. Id.
 {¶ 47} Although there is no precise definition of "attendant circumstances," they generally include "any distraction that would come to the attention of a pedestrian in the same circumstances and reduce the degree of care an ordinary person would exercise at the time."France v. Parliament (April 27, 1994), 2d Dist. *Page 15 
No. 14264, 1994 Ohio App. LEXIS 1793, at 6. "To render a minor defect substantial, attendant circumstances must not only be present, but must create `a greater than normal, and hence substantial risk of injury.' * * * The attendant circumstances must, taken together, divert the attention of the pedestrian, significantly enhance the danger of the defect, and contribute to the fall." Stockhauser, supra, at 33, quotingTurner v. Burndale Gardens Co. (Dec. 18, 1991), 2d Dist. No. CA-12807, 1991 Ohio App. LEXIS 6118, at 5. "All the circumstances — good or bad — must be considered." France at 6.
 {¶ 48} In this case, Gordon testified that she was not distracted by anything while walking. She stated that there was no traffic in the area or any people on the same side of the street when she fell. She also said that it was a warm and sunny day, she was not carrying anything, she was not listening to headphones, and she was wearing tennis shoes. Gordon also stated that she did not have difficulty seeing because of the sun.
 {¶ 49} In contradiction to her deposition testimony, Gordon averred in her undated affidavit that the rise in the sidewalk was obscured by sunlight and shadows. However, "`[a]n affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat the motion for summary judgment.'" Durham v.Moore, 8th Dist. No. 89201, 2007-Ohio-6980, at _35, quoting Byrd v.Smith, 110 Ohio St.3d 24, 2006-Ohio-3455, at paragraph three of the *Page 16 
syllabus. "`If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" Schaeffer v. Lute (Nov. 22, 1996), 6th Dist. No. L-96-045, 1996 Ohio App. LEXIS 5166, at 9, quoting Reid v. Sears Roebuck Co. (C.A.6, 1986), 790 F.2d 453, 460.
 {¶ 50} Nevertheless, an argument that an undisclosed presence of shadows near a residence could be dangerous, stretches the attendant circumstances rule beyond reasonable comprehension. France, supra at 8. This is because a person should not be held liable where he or she had no control over shadows caused by the sun. Hess v. One Americana Ltd.Partnership (Mar. 14, 2002), 10th Dist. No. 01AP-1200, 2002 Ohio App. LEXIS 1071 at 7.
 {¶ 51} Gordon also testified that she was not looking at the sidewalk when she tripped and fell; rather, she was looking at the traffic light as she approached the intersection. In Polster v. Lyndhurst (Apr. 13, 1995), 8th Dist. No. 67570, 1995 Ohio App. LEXIS 1573 at 5, appellant tripped and fell on a minor defect in the sidewalk while looking toward an intersection to see if any vehicles were coming. There were no obstructions other than a few pedestrians. Id. This court could not conclude from the circumstances that the defect was substantial and unreasonably dangerous. Id.
 {¶ 52} Since Gordon said she was looking at the traffic light when she fell, the sunlight and shadows could not have obstructed her view of the sidewalk. In any *Page 17 
event, pursuant to Polster, this would not have created a greater than normal, and hence, substantial risk of injury.
 {¶ 53} Therefore, we determine that there are no genuine issues of material fact as to whether any attendant circumstances made the minor defect substantial.
C. Notice/Ordinance {¶ 54} Finally, Gordon failed to articulate any legal argument and cite any authority that Dziak was liable for her injuries because the city notified him to repair his sidewalk and he failed to do so in compliance with the ordinance. Although this issue is alluded to in her complaint and statement of facts, it is not argued within the assignment of error.
 {¶ 55} "An appellant bears the burden of affirmatively demonstrating the error on appeal, and substantiating his or her arguments in support." Morris v. Hothem Invest., LTD., 9th Dist. No. 03CA0077,2004-Ohio-4869, at _19. See, also, App.R. 16(A)(7). Furthermore, it is not this court's duty to construct a foundation for an appellant's claim. Lechli v. Csanad, 8th Dist. No. 88277, 2007-Ohio-3649, at _22. "* * * [F]ailure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." Kramer v.Cox (1996), 114 Ohio App.3d 41, 60. Thus, Gordon failed to meet this burden on appeal and we shall not address the issue.
 {¶ 56} In conclusion, there are no genuine issues of material fact to be litigated and summary judgment was appropriate. *Page 18 
 {¶ 57} Therefore, Gordon's sole assignment of error is overruled.
 {¶ 58} Accordingly, the judgment of the Cuyahoga County Court of Common Pleas is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY J. BOYLE, JUDGE
ANTHONY O. CALABRESE, JR., P.J., and CHRISTINE T. McMONAGLE, J., CONCUR
[1] Dziak and the city also attached the police report to their summary judgment motions.
[2] It is unclear when Gordon's affidavit was taken because the specific day of the month was omitted; however, the notary did indicate the affidavit was signed in August 2006. The omission of a date is a "scrivener's error, "which is inconsequential and does not invalidate the affidavit. Chase Manhattan Mtge. Corp. v. Locker Locker, 2d Dist. No. 19904, 2003-Ohio-6665, at _25, citing State v. Johnson (Oct. 24, 1997), 2d Dist. No. 96CA1427, 1997 Ohio App. LEXIS 4741.
[3] The ordinance does not specify that a one-inch rise or more is a violation. It provides, under section 903(b)(1), "[a]ny hole or defect that is capable of causing injury, inconvenience; annoyance or damage to sidewalk users shall be repaired by the abutting property owner * * *."
[4] Gordon and Dziak referenced statements from the city inspector's deposition; however, his entire transcript was not filed with the trial court nor is it in the record on appeal. Therefore, we cannot consider those statements claimed to have been made by him. *Page 1