[Cite as *State v. Durham*, 2011-Ohio-2256.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 94747**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ROY A. DURHAM, JR.

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-525549

**BEFORE:** Rocco, J., Stewart, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** May 12, 2011

-i-

**ATTORNEYS FOR APPELLANT**

Timothy Young
Ohio Public Defender

BY:   Stephen P. Hardwick
        Assistant Public Defender
Ohio Public Defender's Office
250 East Broad Street, Suite 1400
Columbus, Ohio 43215

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   Kristen L. Sobieski
        Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

KENNETH A. ROCCO, J.:

{¶ 1}  Defendant-appellant Roy A. Durham, Jr. appeals from his convictions and the sentence imposed after a jury found him guilty of felonious assault and kidnapping.

{¶ 2}  Durham presents five assignments of error.  He claims the trial court allowed two types of improper testimony into evidence, "cumulative error" occurred that denied him his right to a fair trial, the trial court failed

to make the necessary findings before imposing consecutive sentences, and his trial counsel rendered ineffective assistance.

{¶ 3} Upon a review of the record, this court finds none of Durham's claims to have merit. Consequently, his convictions and sentences are affirmed.

{¶ 4} According to the evidence presented at trial, Durham and the victim, Rosalynn Harrell, were friends, having met in 2005. Harrell worked as a secretary, and took an active role in activities at her church. By 2007, Durham was living with Harrell at her apartment; although she supported him, he controlled the household finances.

{¶ 5} On the morning of Tuesday, October 2, 2007, Durham became angry at Harrell, accusing her of having eavesdropped on one of his conversations. He struck her three or four times in the face, then dragged her to the bedroom.

{¶ 6} Once there he placed her in a chair, struck her again, knocked her to the floor, picked her up, pushed her back onto the chair, then tied her to it. He used two belts and a towel. With one belt, he tied her hands behind the chair. He placed a towel in her mouth as a gag, then tied a smaller belt around her head to hold the towel.

{¶ 7}  When Harrell was secured, Durham told her he believed she was involved in a plot against him.  He called her names and threatened to kill her.  Occasionally, he untied her hands only to permit her to write confessions about her role.

{¶ 8}  Harrell did not write "fast enough for him" at one point, so Durham went to the kitchen, obtained a knife, and stabbed her in her right shin.  Approximately twenty minutes later, he threw salt into her wound.

{¶ 9}  Durham kept Harrell captive in the chair until evening.  By that time, he was "calmer," became solicitous, and permitted Harrell to go to bed.  The following day, Harrell remained with Durham because she was bruised and fearful of his reaction if she should attempt to leave.  He reinforced her fear when he became angry again at something she did, "went to yelling and went to hitting [her] with a meat tenderizer" he was using to crush pain medicine.  Harrell attempted to ward off the blows, but one struck her hard in her left hand.

{¶ 10} On Thursday, Durham escorted Harrell to a grocery store and a "tackle shop"; he drove Harrell's car.  He also insisted she wear sunglasses to hide her facial bruises.

{¶ 11} By Friday, Harrell's leg wound was infected.  Durham drove her to an "urgent care" facility, ordered her to explain she sustained her injuries

when someone "jumped her," and dropped her off. She obeyed his enjoinder. Durham returned for Harrell as soon as she received some treatment.

{¶ 12} That evening, Harrell's church pastor, Cornelius White, came to Harrell's apartment, worried because, by that time, she had missed several church obligations for which she had volunteered. White spoke to Durham over the intercom; Durham told White that Harrell was not at home and he thought she was "at her mother's." Durham asked White if he wanted to "come in and see."

{¶ 13} White demurred, but informed Durham he would return if he did not find Harrell. Although White attempted to contact Harrell's mother, he received no answer. Church matters thereafter replaced his concern over Harrell's whereabouts.

{¶ 14} Harrell remained in her apartment with Durham the next day and on Sunday, seeking to keep him pacified. Thus, she missed Sunday church services. That evening, Harrell's sister telephoned White, indicating that Harrell had not been in touch with her family for nearly a week. The call galvanized White into action. He assembled four other church members and they proceeded to Harrell's apartment.

{¶ 15} This time, White and two other churchmen went directly to Harrell's apartment door, pounded on it, and refused to believe Durham when

he told them Harrell was not there. White demanded to be admitted. Durham finally opened the door to confront White, but retreated when he saw White's companions.

{¶ 16} When White entered the apartment, he saw Harrell "laying in a corner broke down in an infant-type position" on the bedroom floor; she appeared "broken." Harrell was unkempt and had difficulty in getting to her feet, so one of the churchmen helped her outside. Upon seeing Harrell's condition, White's wife called the police. Durham, however, did not stay; he drove away in Harrell's car.

{¶ 17} Emboldened by her church and family, Harrell provided a written statement to the police detailing her experience. She also obtained a protective order against Durham.

{¶ 18} Durham subsequently was indicted in this case on five counts, charged with two counts of kidnapping, two counts of felonious assault, and one count of intimidation of a crime victim. His case proceeded to a jury trial.

{¶ 19} The state presented the testimony of Harrell, a few of her acquaintances from church, and police officers who became involved in the case. At the conclusion of the state's case, the trial court granted Durham's

motion for acquittal as to one count of kidnapping. Durham elected to present no evidence.

{¶ 20} The jury found Durham guilty of one count of kidnapping, and the two counts of felonious assault, but not guilty of intimidation. At sentencing, the trial court merged the two counts of felonious assault pursuant to R.C. 2941.25(A), and imposed consecutive terms of five years on count one and four years on count three.

{¶ 21} Durham presents the following assignments of error for review.

{¶ 22} "I. **The trial court erred by permitting the complaining witness to testify based on 'refreshed recollection' without a proper foundation.**

{¶ 23} "II. **The trial court erred by admitting hearsay to improperly bolster the testimony of a key state witnesses [sic].**

{¶ 24} "III. **Cumulative error prejudiced Mr. Durham.**

{¶ 25} "IV. **The trial court erred by imposing consecutive sentences without making findings as required by R.C. 2929.14(E).**

{¶ 26} "V. **The convictions and sentence violate Mr. Durham's right to the effective assistance of counsel.**"

{¶ 27} Durham's first and second assignments of error both address trial court rulings concerning the admission of evidence. These matters lie within

the sound discretion of the trial court, and the judgment will not be disturbed unless it is unreasonable, arbitrary, or unconscionable. *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. Furthermore, error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected. Evid.R. 103.

**{¶ 28}** Initially, Durham contends the trial court erred when it permitted the prosecutor to show Harrell the written statement she gave to the police in order to refresh her recollection of the details of the ordeal she endured with Durham. Durham cites none of the Ohio Rules of Evidence to support his argument, perhaps because none does.

**{¶ 29}** Evid.R. 612 permits a party to use a writing to refresh a witness's recollection. See, e.g., *State v. Ballew*, 76 Ohio St.3d 244, 254, 1996-Ohio-81, 667 N.E.2d 369. The party may not read the writing aloud, have the witness read it aloud, or otherwise place it before the jury. Id. Rather, the witness reads the writing silently in order to refresh her recollection. *Dayton v. Combs* (1993), 94 Ohio App.3d 291, 640 N.E.2d 863. If the writing refreshes the witness's recollection, the witness then testifies using present independent knowledge. *State v. Scott* (1972), 31 Ohio St.2d 1, 5-6, 285 N.E.2d 344; cf., *Cleveland v. Schumann*, Cuyahoga App. No. 95530,

2011-Ohio-741. It is this testimony, not the writing, that is the evidence. Id., ¶12, citing *State v. Woods* (1988), 48 Ohio App.3d 1, 548 N.E.2d 954.

**{¶ 30}** In this case, Harrell's ordeal took place three years prior to the time the case actually proceeded to trial. She admitted on direct examination that she could not remember her entire description of what occurred, assented when the prosecutor asked her if her written statement would refresh her memory, and informed the trial court after a review of her statement that she now recalled additional details. The trial court committed no error under these circumstances.

**{¶ 31}** Durham further asserts the trial court improperly permitted: 1) White to testify that he promised Harrell's father he would "keep an eye out for her"; and, 2) a police officer to testify Harrell decided to "press charges" against Durham after the incident. Durham contends this testimony constituted hearsay in violation of Evid.R. 801(C) and 802.

**{¶ 32}** Evid.R. 801(C) defines "hearsay" as "a statement, *other than one made by the declarant while testifying at trial* or hearing, offered in evidence to prove the truth of the matter asserted." (Emphasis added.) By the terms of Evid.R. 802, a witness is barred on hearsay grounds from testifying as to the *statements made by another* when the statement is offered to prove the truth of the matter asserted in the statement, and when the statement falls

outside any exception to the rule against hearsay.  *State v. Carter* (1995), 72 Ohio St.3d 545, 549, 651 N.E.2d 965.

{¶ 33} To be inadmissible as hearsay, therefore, the witness must testify about a  statement.  It follows that when the witness merely testifies about his own declarations or observations, or actions taken as a result of another's decisions, this testimony does not fit the definition of Evid.R. 801(C), and it is not prohibited by Evid.R. 802.  *State v. Mills* (Mar. 20, 1997), Cuyahoga App. No. 69788, citing *Carter*.  Neither of the instances of which Durham complains in his second assignment of error fit within the prohibition against hearsay.

{¶ 34} White testified he made a promise to Harrell's father and this promise, in part, prompted White to check on her well-being.  Similarly, the police officer merely mentioned that the investigation proceeded because Harrell cooperated with it.  Neither of these instances violated Evid.R. 801(C) and 802. [1]  *State v. Osborne*, Knox App. No. 2005-CA-09, 2005-Ohio-6497.

---

[1]The testimony of which Durham complains might more accurately be termed a part of the "res gestae" of the incident.  According to *Black's Law Dictionary* (4 Ed., 1951), "while often spoken of as an exception to the hearsay rule," the "res gestae" is "generally not such in fact, but ordinarily relates to statements which because of their intimate relation to facts become a part of those facts and are therefore admitted as such."

**{¶ 35}** Since the trial court, therefore, committed no error in admitting evidence, Durham's first and second assignments of error are overruled.

**{¶ 36}** In his third assignment of error, Durham argues that his convictions result from "cumulative error." He cites neither particular portions of the record nor any legal authority to support this argument. This court, therefore, declines to address it. App.R. 12(A)(2); *State v. Watson* (1998), 126 Ohio App.3d 316, 710 N.E.2d 340. Durham's third assignment of error is overruled.

**{¶ 37}** Durham argues in his fourth assignment of error that the trial court erred in imposing consecutive sentences without providing findings and reasons in support of those findings. He allows that the Ohio Supreme Court specifically held in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, that such findings were not required, but he relies on *Oregon v. Ice* (2009), 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 to assert that *Foster* was incorrectly decided and must be overturned, thus reinstating R.C. 2929.14(E)(4), which *Foster* held unconstitutional.

**{¶ 38}** However, the Ohio Supreme Court recently has addressed and rejected Durham's argument in *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768. *Hodge* held that the statutory provisions are not revived. Id., paragraph two of the syllabus.

{¶ 39} Moreover, the supreme court also held that, unless the General Assembly enacts new legislation requiring that findings be made, trial courts are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences. Id., paragraph three of the syllabus; see, also, *State v. Townsend*, Cuyahoga App. No. 94473, 2011-Ohio-86.

{¶ 40} Durham's fourth assignment of error, accordingly, is overruled.

{¶ 41} In his fifth assignment of error, Durham claims that his trial counsel provided ineffective assistance by failing to "object to any of the errors raised in this brief." Durham makes this claim despite his trial counsel's obvious effort on his client's behalf, and his success in securing Durham's acquittal on two of the five counts of the indictment. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus.

{¶ 42} Once again, Durham neither argues anything specifically, nor cites to any particular portion of the record to support his claim. Id. Therefore, this court answers Durham's claim by quoting the following portion of *Watson*:

{¶ 43} "An appellate court may rely upon App.R.12(A) in overruling or disregarding an assignment of error because of 'the lack of briefing' on the assignment of error. *Hawley v. Ritley* (1988), 35 Ohio St.3d 157, 159, 519 N.E.2d 390, 392-393. It is not the duty of an appellate court to search the

record for evidence to support an appellant's argument as to any alleged error. *State v. McGuire* (Apr. 15, 1996), Preble App. No. CA95-01-001, unreported, at 40, 1996 WL 174609, affirmed (1997), 80 Ohio St.3d 390, 686 N.E.2d 1112. 'An appellate court is not a performing bear, required to dance to each and every tune played on an appeal.' Id., following *State v. Lorraine* (Feb. 23, 1996), Trumbull App. No. 95-T-5196, unreported, at 9, 1996 WL 207676.

**{¶ 44}** "Accordingly, we find that appellant has failed to comply with App.R. 16(A) because he fails to present 'reasons in support of the contentions' and for his 'lack of briefing' on his assignment of error. Appellant's * * * assignment of error is overruled based upon App.R. 12(A)(2)."

**{¶ 45}** Since none of Durham's assignments of error has merit, his convictions and sentence are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

MELODY J. STEWART, P.J., and
SEAN C. GALLAGHER, J., CONCUR