[Cite as *Gracetech Inc. v. Perez*, 2012-Ohio-700.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 96913

---

## GRACETECH INC., ET AL.

### PLAINTIFFS-APPELLANTS

vs.

## THEODORE A. PEREZ, ET AL.

### DEFENDANTS-APPELLEES

---

### JUDGMENT:
### AFFIRMED IN PART,
### REVERSED IN PART, AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-633275

**BEFORE:** S. Gallagher, J., Boyle, P.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:** February 23, 2012

**ATTORNEY FOR APPELLANTS**

William T. Wuliger
The Brownell Building
1340 Sumner Court
Cleveland, OH   44115

**ATTORNEY FOR APPELLEES**

Michael P. Harvey
Michael P. Harvey Co., L.P.A.
311 Northcliff Drive
Rocky River, OH   44116

SEAN C. GALLAGHER, J.:

**{¶1}** Plaintiffs-appellants Gracetech, Inc., and Marjie Dorr appeal the final judgment in favor of defendants-appellees Theodore Perez and Precision Security Agency (collectively "appellees") on appellants' claims for breach of fiduciary duty, tortious interference with business relations or a contract, conversion, and Ohio trade secrets violations and the judgment in favor of appellants on their breach of contract claim for $2,500.   Appellees did not file a cross-appeal.   For the following reasons, we affirm in part, reverse in part, and remand the case for further proceedings.

**{¶2}** John Grace was the sole shareholder of Gracetech, which provided security services solely to Dave's Supermarket ("Dave's") stores in and around Cleveland, Ohio. Grace managed the operations until his untimely death on July 16, 2007.   At that time, the shares of Gracetech transferred to Grace's mother, Dorr.   Perez worked for Gracetech since 2000 as an independent contractor providing security services.   Perez signed a noncompete agreement with Gracetech that prohibited him from providing

security services with Dave's for a period of one year after terminating his employment with Gracetech. We note that while Perez continually denies that the noncompete agreement is valid, the trial court determined, in the August 15, 2009 journal entry, that it was and that Perez breached the noncompete agreement. Perez did not appeal this determination.

{¶3} On July 17, 2007, Perez and Dorr talked about the future of Gracetech. Perez indicated that the corporation needed someone to take charge of the daily affairs, including payroll and scheduling, a "go-to person." According to Perez, he agreed to handle that responsibility and was told by Dorr that "until further notice," he was in charge of Gracetech's operations. Perez continually disputed whether his responsibility was that of a manager, but admitted to no limitations on his authority. Perez also stated that he was only in charge of payroll and scheduling, but his testimony consistently flipped back and forth on the issue. *See, e.g.,* Tr. 508:4-14; Tr. 198:12-16 (Perez admitted that he was unequivocally authorized to be in charge of Gracetech). Perez called the state of Ohio sometime between July 17 and 21, 2007, to inform the state licensing agency of Grace's death. Pursuant to R.C. 4749.03(G), Gracetech had until July 26, 2007, to notify the state, by certified mail, of the fact that Grace was no longer associated with Gracetech. If that occurred, Gracetech had until August 16, 2007, to proffer another individual to be named holder of the license Gracetech needed to operate. Grace was buried on July 21. On July 20, Perez began filing the appropriate

applications to start Precision Security Agency ("Precision") with the intent to provide security services to Dave's.

{¶4} Perez began providing security services to Dave's on August 12, 2007, although he was not licensed to provide security services until August 28. Sometime prior to August 12, Perez also told the co-owner of Dave's that Gracetech was not meeting the deadlines to maintain the appropriate licensing and that the new shareholder, Dorr, was not communicating with Perez. Perez talked with Gracetech's security personnel and told them that Dave's Supermarket was ceasing its business with Gracetech and would be transferring its business to Perez's newly formed Precision. Gracetech's security personnel all joined Precision for the August 12, 2007 operations. On August 20, 2007, appellants filed a complaint[1] and request for injunctive relief to enforce the noncompete agreement. The trial court never held a hearing on the injunctive relief issue, despite holding that the noncompete agreement was enforceable against and breached by Perez.

{¶5} Despite several procedural missteps by both parties, trial commenced on appellants' claims against appellees for their tortious interference with business relations between Gracetech and Dave's, tortious interference with noncompete agreements between Gracetech and its employees, conversion of Gracetech's assets, and Ohio trade secrets violations. Prior to trial, the trial court allowed appellants to also assert a claim

---

[1] Appellants also asserted causes of action that were all disposed of prior to trial against Gracetech's former security personnel and another Precision employee. No party appealed the various dispositions. The only parties at trial, therefore, were appellants, Perez, and Precision. The trial court's November 23, 2011 nunc pro tunc entry that corrected the judgment entered upon the jury verdict to reflect both plaintiffs, therefore, disposed of all claims that were heard and submitted at trial and

for breach of fiduciary duty against Perez at trial. Appellees have not appealed this decision either. Appellants submitted the issue of damages on their breach of contract claim against Perez, referring to the noncompete agreement, despite the fact the trial court awarded appellants $2,500 in damages based on a liquidated damages clause within the noncompete agreement.

{¶6} The trial court instructed the jury and provided verdict forms for all claims except the breach of contract. On that issue, the trial court instructed the jury that the noncompete agreement was enforceable and was breached by Perez. The court then told the jury that if they chose to award damages on the breach of contract, to put the damages on the general damage form despite no correlating breach of contract verdict form. After deliberating, the jury returned a verdict finding no liability on behalf of appellees for all claims and left the damages verdict form blank. Upon the arguments of the parties, the trial court told the jury to re-deliberate on the contract damages issue and fill in the appropriate amount of damages. The trial court did not give any instruction as to the appropriate measure of damages on the breach of contract claim. The jury came back and awarded $2,500 in favor of appellants on the breach of contract claim. The trial court entered judgment accordingly based on the verdict, having denied the motions for judgment notwithstanding the verdict. The trial court also denied appellants' motion for a new trial.

---

constituted the final order of the trial court.

**{¶7}** It is from this decision that appellants appeal, raising four assignments of error, which provide as follows:

> I. The trial court committed reversible error by failing to grant summary judgment for appellant Gracetech on its claims for tortious interference with a business relationship, and conversion.

> II. The trial court committed reversible error by failing to grant a directed verdict for appellant Gracetech on its claims for tortious interference with a contract, tortious interference with a relationship, and breach of fiduciary duty.

> III. The trial court committed reversible error by sua sponte awarding damages on the breach of contract claim in the amount of $2,500.

> IV. The trial court committed reversible error by denying appellant's motion for judgment notwithstanding the verdict/motion for new trial.

For the sake of simplicity, we will address appellants' first, second, and fourth assignments of error together before addressing their third assignment of error.

**{¶8}** Before addressing the merits of the appeal, we must discuss appellees' open-ended argument that because the judgment rendered upon the jury verdict was satisfied, the instant appeal is moot. Appellees cite to *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 245, 551 N.E.2d 1249 (1990), for the proposition that "satisfaction of judgment renders an appeal from that judgment moot. Where * * * the judgment is voluntarily paid and satisfied, such payment * * * takes away from the defendant the right to appeal or prosecute error or even to move for vacation of judgment." Appellees have failed to identify the place in the record that even establishes that the judgment was indeed satisfied. "It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error." *State v. Durham*,

8th Dist. No. 94747, 2011-Ohio-2256, 2011 WL 1849409, ¶ 43, citing *State v. McGuire*, 12th Dist. No. CA95-01-001, 1996 WL 174609 (Apr. 15, 1996). Appellees failed to support their claims with citations to the record, case law, or statutes. App.R. 12(A)(2) and 16(A)(7). We need not address their arguments as advanced in their appellate brief.

### Appellants' First, Second, and Fourth Assignments of Error

{¶9} Turning to the merits of the appeal, appellants argue, in their first, second, and fourth assignments of error, that the trial court erred in denying their motions for summary judgment, directed verdict, and judgment notwithstanding the verdict ("JNOV") upon the tortious interference with a business relationship, tortious interference with a contract, breach of fiduciary duty, and conversion claims advanced against appellees. "'The standard applicable to a motion for summary judgment, a directed verdict, and a motion for [JNOV] * * * are [sic] the same.'" *Miller v. Coldwell Banker Hunter Realty*, 8th Dist. Nos. 93529 and 93662, 2010-Ohio-5840, 2010 WL 4892677, ¶ 17, quoting *Siebert v. Lalich*, 8th Dist. No. 87272, 2006-Ohio-6274, 2006 WL 3446235, ¶ 14. Each motion should be granted if the movant is entitled to judgment as a matter of law, construing the evidence most strongly in favor of the nonmoving party. *Id.* We review such claims under the de novo standard of review. *See Groob v. Key Bank*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, ¶ 14.

{¶10} We have to presume, based on the record, that appellants' claim that appellees tortiously interfered with a business relationship refers to Perez's conduct in procuring Dave's business for Precision, and that appellants' claim that appellees

tortiously interfered with a contract relates to appellees' inducing Gracetech's employees to breach their noncompete agreements and provide services for Dave's. Gracetech's relationships with both its employees and Dave's were at-will. Our presumption is the only way to reconcile the artless pleadings[2] with the evidence in the record and the claims made at trial.

## 1. Breach of Fiduciary Duty

{¶11} Appellants argue that they proved the existence of a fiduciary relationship between Perez and appellants. In order to prove a breach of fiduciary duty claim, the plaintiff must establish (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom. "A 'fiduciary' has been defined as a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking." (Internal citations and quotations omitted.) *Lombardo v. Mahoney*, 8th Dist. No. 92608, 2009-Ohio-5826, 2009 WL 3649997, ¶ 18-19. In some instances, an employee can be a fiduciary of an employer; however, employees typically owe nothing more than a duty of good faith and loyalty to their employer. *Id.*

{¶12} Generally, the determination of what constitutes a fiduciary relationship is a question of fact dependent on the circumstances of each case.

> A confidential relationship is one in which one person comes to rely on and
> trust another in his important affairs and the relations there involved are not

---

[2]The complaint refers to all defendants in the collective for every claim advanced. From a review of the four corners of the complaint, it is apparent that only certain counts apply to certain defendants. As always, this can be avoided by simply naming the defendants, in multi-defendant actions, in the separate counts instead of relying on the generic moniker "defendants."

necessarily legal, but may be moral, social, domestic or merely personal. *First Bank Natl. Assn. v. Luizzi*, 8th Dist. No. 51899, 1987 WL 9848 (Apr. 16, 1987), *2, citing *Taylor v. Shields*, 64 Ohio Law Abs. 193, 111 N.E.2d 595, 597 (1951).

**{¶13}** Appellants established through Perez's testimony that Perez told Dorr that Gracetech needed someone to take charge of the daily affairs, including payroll and scheduling, a "go-to person"; he agreed to handle that responsibility and was told by Dorr that "until further notice," he was in charge of Gracetech's operations; and he had no limitations on his authority. Perez also indicated that Dorr was incapable of running Gracetech's operations as being a reason for a "go-to" person to handle the daily affairs.

**{¶14}** Whether a fiduciary relationship exists is generally an issue of fact. In this case, however, Perez admitted to taking control of Gracetech's daily operations because Dorr did not have the expertise to run its operations and, according to Perez, needed to appoint a "go-to" person to fill this role. The evidence at trial did not present an issue of fact as to whether Perez owed Dorr a fiduciary duty. Appellees rely on the fact that Perez continually disavowed his role with Gracetech after Grace's death. Perez, while admitting he was the "go-to" person for Gracetech, also continually attempted to limit his assumed responsibilities to handling the payroll and scheduling. Perez was clear, however, that he undertook the responsibility of being the "go-to" person to handle Gracetech's daily affairs while Dorr attempted to transition the corporation after the death of Grace. Perez cannot create an issue of fact through his own inconsistent trial testimony by disavowing his clear statements that he had unfettered responsibility to ensure Gracetech's daily operations. *See Gordon v. Dziak,* 8th Dist. No. 88882,

2008-Ohio-570, 2008 WL 384146, ¶ 49 (noting that parties may not create issues of fact by submitting affidavits that directly contradict their prior testimony). The testimony of Perez and Steven Saltzman, a co-owner of Dave's, established that Perez failed to disclose his fiduciary relationship with Gracetech to Saltzman when the two were negotiating the agreement for Precision to take over the security services from Gracetech. Perez essentially represented that Gracetech was folding after the death of its founder because the new shareholder was not communicating with Dave's or Perez.

{¶15} Appellees also claim there is an issue of fact that supports the trial court's denial of summary judgment, a directed verdict, and JNOV based on their contention that Perez never received a formal promotion to the manager position, which would include a raise, a title, or a statement from Dorr that he was her fiduciary. Appellees provide no citation to statutory or case authority for the proposition that a fiduciary must have a certain title, receive a raise, or be specifically told he or she is entering a fiduciary relationship with the other party. We therefore need not address these arguments. App.R. 12(A)(2) and 16(A)(7).

{¶16} In the alternative, appellees claim that Perez did not know his relationship with Dorr was that of a fiduciary. Perez claims his relationship with appellants arose de facto from an informal relationship that must be recognized by both parties. *Blon v. Bank One, Akron*, 35 Ohio St.3d 98, 519 N.E.2d 363 (1988). Perez cannot play the part of the proverbial ostrich.[3] While he claims he was unaware of the weight of the

---

[3]We do not intend to denigrate the noble ostrich any further than folklore already has accomplished. As Judge Richard

responsibility authorized by Dorr, his testimony clearly indicated that he was responsible for the daily operations and that Dorr was not familiar with the legal requirements of running Gracetech. In fact, Perez continuously maintained that Dorr was incapable of running Gracetech as the reason for appointing a "go-to" person and for his disavowing Dorr's interest as a shareholder of Gracetech. Perez's statements highlight the fiduciary-type relationship he undertook because Dorr needed someone who knew the business to help her operate it.

{¶17} The trial court erred in denying appellants' motion for directed verdict upon the breach of fiduciary duty claim. The evidence at trial established that Perez owed Dorr a fiduciary duty when he undertook the management of Gracetech and breached the fiduciary duty owed when he misrepresented the state of Gracetech after Grace's untimely passing. There were no issues of fact that warranted sending the issue of liability on the claim to the jury. Perez's testimony itself established the liability elements of the claim. We therefore sustain appellants' arguments and reverse the trial court's decision to deny the directed verdict upon liability.

{¶18} There was an issue of fact, however, as to the damages appellants sought. Appellants offered expert testimony on the damages issue. Appellees attacked the

---

Posner aptly noted,

> [t]he reference of course is to the legend that ostriches when frightened bury their head in the sand. It is pure legend and a canard on a very distinguished bird. Zoological Society of San Diego, Birds: Ostrich, www.sandiegozoo.org/animalbytes/t-ostrich.html (visited June 12, 2008) ("When an ostrich senses danger and cannot run away, it flops to the ground and remains still, with its head and neck flat on the ground in front of it. Because the head and neck are lightly colored, they blend in with the color of the soil. From a distance, it just looks like the ostrich has buried its head in the sand, because only the body is visible"). It is too late, however, to correct this injustice. *U.S. v. Black*, 530 F.3d 596, (7th Cir. 2008).

expert's credibility. Because credibility is an issue, the trier of fact must resolve the issue. The jury found no liability and never reached a decision on damages. We must, therefore, remand for further proceedings.

### 2. Tortious Interference with a Business Relationship and Contract

{¶19} In order to establish a claim for tortious interference with a business relationship or contract, a plaintiff must demonstrate the following:

> (1) a business relationship or contract; (2) the wrongdoer's knowledge of the relationship or contract; (3) the wrongdoer's intentional and improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting damages. *Byrne v. Univ. Hosps.*, 8th Dist. No. 95971, 2011-Ohio-4110, 2011 WL 3630483, ¶ 28, citing *Castle Hill Holdings, LLC v. Al Hut, Inc.*, 8th Dist. No. 86442, 2006-Ohio-1353, 2006 WL 726911, ¶ 46.

Whether the business relationship is an at-will relationship does not in and of itself preclude a finding that the defendant tortiously interfered with the business relationship and, therefore, is not dispositive of the claim. *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 178, 1999-Ohio-260, 707 N.E.2d 853. On the other hand, interference with the business relationship alone is insufficient to sustain a cause of action for tortious interference. *Id.* It is the improper nature of the conduct that establishes liability. *Baseball at Trotwood, LLC v. Dayton Professional Baseball Club,* S.D.Ohio

No. C-3-98-260, 2003 WL 25566103, *5 (Sept. 2, 2003). Courts must consider the following factors in determining whether the actor's means are improper:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties. *Fred Siegel*, at paragraph three of the syllabus.

{¶20} As it relates to Gracetech and Dave's business relationship, it was undisputed that Gracetech had an ongoing business relationship with Dave's to provide security services, that Perez was aware of the continuing nature of that at-will relationship, and that Perez signed a valid noncompete agreement that prohibited him from providing services to Dave's for a period of one year after his relationship with Gracetech terminated. Appellees presented no evidence that Dave's intended to terminate its relationship with Gracetech because of Grace's death. In fact, Saltzman testified that he transferred the security business to Precision only when Perez offered to provide the security services; Saltzman based his decision on Perez's "significant" involvement with Gracetech and the fact that no one from Gracetech had discussed succession plans with him. Perez never disclosed to Saltzman the fact that Perez told Dorr he would be the temporary "go-to" person for Gracetech while she handled her son's final affairs. Appellants established that Perez acted improperly in poaching Dave's business from Gracetech.

**{¶21}** In response, appellees argued that Perez was privileged in procuring the termination of Gracetech and Dave's relationship because he was a competitor of Gracetech.[4] In Ohio, individuals are privileged to purposely cause another party to terminate an at-will business relation with a competitor of the actor if (1) the acts causing the interference relates to competition between the actor and the other; (2) the actor does not employ improper means; (3) the actor does not intend to create or continue an illegal restraint of competition; and (4) the actor's purpose is, at least in part, to advance his interest in his competition with the other. *Fred Siegel*, 85 Ohio St.3d 171, 1999-Ohio-260, 707 N.E.2d 853.

**{¶22}** Appellees' reliance on the fair competition privilege is misplaced. As appellees point out, it is not clear from the record that Precision even existed when the purported improper actions occurred. This highlights the fact that Perez was not actively in competition with Gracetech when he diverted the business away from Gracetech. According to Perez, he spoke to Gracetech's employees and Dave's representatives sometime between July 17 and August 11, 2007. At that time he was the self-proclaimed "go-to" person for Gracetech and he was not in competition with Gracetech. This is distinguished from situations where the employee sets up a competing business and resigns *prior to* soliciting the former clients. *Dill-Elam, Inc. v. Smallwood Bros. Transp. Serv.*, 12 Dist. No. 2005-01-001, 2005-Ohio-6554, 2005 WL

---

[4]We are disregarding appellees' preposterous argument that appellants failed to maintain an action for tortious interference with a business relationship because the sole shareholder and director of Gracetech died. According to appellees, the corporation ceased to exist upon the death of Grace. The death of the sole shareholder does not act to dissolve the corporation. *See Chickey v. Watts*, 10th Dist. Nos. 04AP-818 and 04AP-1269, 2005-Ohio-4974, 2005 WL 2303745, ¶ 27.

3359017, ¶ 8. In the current situation, Perez set up a competing business and then solicited the client while not only being employed by Gracetech but actually having management-type responsibilities to keep Gracetech operating during the transition period.

{¶23} Appellants established that the fair competition privilege did not apply to appellees and there was no genuine issue of material fact as to the liability on appellants' intentional interference with a business relationship claim, when construing the evidence in favor of appellees. We must sustain appellants' arguments and reverse the trial court's decision to deny appellants' motion for directed verdict based on the arguments made to this court and a thorough review of the record. The trial court erred in denying appellants' motion for directed verdict upon the liability for appellants' tortious interference with a business relationship claim. As with the breach of fiduciary duty claim, there is an issue of fact regarding the damages sustained by appellants. We must remand the case for further proceedings.

{¶24} As it relates to appellants' claim for intentional interference with Gracetech's and its employees' noncompete agreements, appellants contend there were no genuine issues of material fact with whether appellees were aware of the noncompete agreements. However, the only related testimony about whether Perez was aware that all other employees signed noncompete agreements was summed up in one question from appellants' counsel at trial:

Dorr received Grace's shares of Gracetech through testate succession and thereby became the sole shareholder of the corporation.

Q. Now, it is fair to say that you were aware that a number of the Gracetech security personnel had noncompetes?

A. It is fair to say that those things were signed by certain people.
Tr. 233:11-15.

The only other arguably relevant trial testimony was that Perez could identify the contracts signed by the other employees. These statements alone do not establish that at the time he asked them to join Precision, Perez was aware of the noncompete agreements that the other employees signed. Therefore, the trial court did not err in denying appellants' motion for directed verdict and JNOV upon the intentional interference with a contract claim. There was an issue of fact as to whether Perez knew the other employees also had noncompete agreements with Gracetech. Appellants' arguments to the contrary are overruled.

### 3. Conversion

**{¶25}** Appellants next argue that the trial court failed to grant judgment in their favor upon the conversion claim. In order to establish a claim of conversion, the plaintiff must demonstrate (1) an ownership or right to possession of the personal property at the time of conversion; (2) a wrongful act or disposition of those property rights; and (3) damages. *Schiff v. Dickson*, 8th Dist. Nos. 96539 and 96541, 2011-Ohio-6079, 2011 WL 5870048, ¶ 30, citing *Dream Makers v. Marshek*, 8th Dist. No. 81249, 2002-Ohio-7069, 2002 WL 31839190.

**{¶26}** On appeal, appellant argues that appellees converted property of Gracetech, specifically Gracetech's employees and client. Generally, conversion claims must be

based upon the taking of identifiable, tangible personal property for which plaintiff has a right of possession. *Landskroner v. Landskroner*, 154 Ohio App.3d 471, 2003-Ohio-4945, 797 N.E.2d 1002 (8th Dist.2003), ¶ 27. Employees and clients are not the personal property of the corporation or subject to a right of being possessed by appellants. Appellants' arguments to the contrary are without merit and are overruled.

{¶27} Appellants' first, second, and fourth assignments of error are sustained in part and overruled in part. Our disposition of the these assignments of renders appellants' arguments pertaining to the trial court's denial of a motion for new trial moot.

### Appellants' Third Assignment of Error

{¶28} Finally, appellants argue that the trial court erred when it granted partial summary judgment upon the breach of contract claim and sua sponte awarded liquidated damages in the amount of $2,500. The visiting judge, at trial, sent the damages issue on the breach of contract claim to the jury, which implicitly means the court overruled the previous interlocutory order granting partial summary judgment.

{¶29} This presents a different set of problems not addressed by either party. If liquidated damages were the exclusive measure of damages pursuant to the express terms of the noncompete agreements, there would be no issue of fact necessitating review by the jury. *See 22810 Lakeshore Corp. v. Xam, Inc.*, 8th Dist. No. 79091, 2002-Ohio-20, 2002 WL 22096, *5. In order to send the damages issue to the jury, the trial court had to reverse its partial summary judgment ruling and make the finding that the liquidated damages clause was not the exclusive remedy upon breaching the noncompete agreement;

in that case, appellants could seek either actual or liquidated damages. The trial court allowed the damages issue to be reviewed by the jury. Appellants, therefore, pursued actual damages as the measure of damages at trial based on the visiting judge's ruling. Any argument that the trial court erred in granting partial summary judgment and sua sponte awarding damages solely based on the liquidated damages clause is moot. The partial summary judgment decision was interlocutory in nature, and the trial court properly exercised its discretion in reconsidering its prior order. *Kovach v. Warren Roofing & Illum. Co.*, 8th Dist. No. 88430, 2007-Ohio-2514, 2007 WL 1508530, ¶ 10. Appellants received the relief they now request; more specifically, appellants were able to pursue actual damages on the breach of contract claim at trial. Appellants' third assignment of error is, accordingly, overruled.

### Conclusion

{¶30} The trial court erred in denying appellants' motion for directed verdict upon appellants' claims for tortious interference with a business relationship and breach of fiduciary duty claim. The trial court should have granted appellants' motion for directed verdict upon liability for those two claims, and appellants' related assignments of error are sustained. All other assignments of error are overruled.

{¶31} The decision of the trial court is, accordingly, affirmed in part, reversed in part, and the case remanded for further proceedings consistent with this opinion.

It is ordered that appellants and appellees share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

JAMES J. SWEENEY, J., CONCURS;
MARY J. BOYLE, P.J., CONCURS IN JUDGMENT ONLY